# UNITED STATES *v.* PHILBRICK.

## APPEAL FROM THE COURT OF CLAIMS.

Submitted December 6, 1886. — Decided January 10, 1887.

Prior to the enactment in the act of February 25, 1871, 16 Stat. 431, now Rev. Stat. § 12, that "whenever an act is repealed, which repealed a former act, such former act shall not thereby be revived unless it shall be expressly so provided," it was the general rule of law that the repeal of a repealing act restored the law as it was before the passage of the latter act without formal words for that purpose, unless otherwise provided either in the repealing act or by some general statute.

Before the passage of the act of March 3, 1835, forbidding it, 4 Stat. 757, it was lawful for the Secretary of the Navy to make allowances out of appropriations in gross to officers of the Navy beyond their regular pay, for quarters, furniture, lights, fuel, &c., and the repeal of that act by the act of April 17, 1866, 14 Stat. 33, restored the right to make such allowances; and such as were made by him and were settled at the Treasury Department, between the date when the latter act went into effect and the passage of the act of February 25, 1871, 16 Stat. 431, were made in accordance with the executive construction of the statutes respecting the navy and the Navy Department prior to 1835, and this court will not at this late day question their validity.

The contemporaneous construction of a statute by the Executive Department charged with its execution is entitled to great weight, and ought not to be overturned unless clearly erroneous.

It is not decided (1) whether after settlement of an account at the Treasury it can be reopened by the accounting officers on the ground of error arising only from mistake of law; nor (2) whether errors in accounts with the United States, stated closed and settled by payment, can be corrected otherwise than by regular judicial proceedings instituted by the United States.

THE case is stated in the opinion of the court.

*Mr. Attorney General* and *Mr. F. P. Dewees* for appellant.

*Mr. John Paul Jones* and *Mr. Robert B. Lines* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

The appellee, Philbrick, having served as a carpenter in the navy from July 8, 1861, to March 14, 1866, and again continuously after November 12, 1869, filed with the Fourth Auditor of the Treasury his claim for the benefits of the act of Congress of March 3, 1883, providing, among other things, that "all officers of the navy shall be credited with the actual time they may have served as officers or enlisted men in the regular, or volunteer army or navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if all said service had been continuous, and in the regular navy, in the lowest grade having graduated pay held by such officer since last entering the service." 22 Stat. 473. The claim having been passed by the Fourth Auditor, was forwarded to the Second Comptroller of the Treasury, who is the reviewing officer charged with the examination of all accounts of this class. The latter officer, while recognizing that the appellee had a valid claim under the act of 1883, deducted from the amount which the Fourth Auditor had ascertained to be due the sum of $214.88. That amount was made up of two items, $169.50 and $45.38.

In respect to the item of $169.50 — which is the only one disputed on this appeal — the Second Comptroller held that that sum had, by mistake of law, been improperly allowed and paid to appellee for commutation of quarters, furniture, lights, and fuel from November 12, 1869, to July 1, 1870, although such payment was in conformity with a general order, issued by the Secretary of the Navy on the 12th of May, 1866, in reference to allowances to officers in that branch of the public service.

It is, however, insisted, on behalf of the United States, that

that order was unauthorized by law and void; and, consequently, that the amount allowed under it to appellee was properly chargeable against his claim for pay under the act of 1883.

So far as we are aware, the first act of Congress providing for special allowances or compensation to officers, seamen, and marines beyond their regular pay, was that of April 18, 1814. The second section of that act authorized the President "to make an addition, not exceeding twenty-five per cent., to the pay of the officers, midshipmen, seamen, and marines, engaged in any service, the hardships or disadvantages of which shall, in his judgment, render such addition necessary." 3 Stat. 136, c. 83. That section was, however, repealed by the act of February 22, 1817. 3 Stat. 345, c. 13. The reasons which led to the withdrawal of this power from the President are not disclosed in any public document to which our attention has been called. The practice which prevailed in the Navy Department for many years after the passage of the act of 1817, in reference to special allowances to or for the benefit of naval officers beyond their regular pay — of which practice Congress was fully informed — tends to show that the repeal of the act of 1814 was not intended as a prohibition of allowances of every kind. In the Rules, Regulations, and Instructions prepared by the Board of Navy Commissioners, with the consent of the Secretary of the Navy, and published in 1818, — a copy of which was transmitted to Congress by President Monroe on the 20th of April of that year, American State Papers, Class VI, Naval Affairs, p. 510, — will be found provisions for certain allowances, graduated according to the character of the vessel or the rank of the officer in charge. In the "Rules of the Navy Department regulating the Civil Administration of the Navy Department," prepared under the supervision of Secretary Woodbury, and by him published in 1832 in what is known as the "Red Book," are provisions in reference to allowances for cabin furniture, chamber money, furniture of officers' houses at yards, fuel, lights, servants, &c. Chapter 10. Besides, the naval appropriation acts, for many years before and after 1832, contained items in gross for all the objects

covered by these allowances; but none of them contained directions as to the manner in which the sums appropriated should be apportioned. The absence of such directions was no doubt due to the fact, known to Congress, that the amounts annually appropriated were used or apportioned by the Navy Department as indicated in the rules prescribed by the Secretary.

That these allowances were habitually made, and that Congress was aware of this practice, appears from a report to President Monroe by the Secretary of the Navy, transmitted to Congress on the 4th of March, 1822. That report was accompanied by a statement showing the number and grade of the officers attached to each navy yard or station, with the amount allowed each for pay, subsistence, emoluments, or extra compensation. The Secretary in his report says: "The allowances to officers attached to the navy yards have, I understand, been made to them since the commencement of these establishments, and vary in some instances according to the expense of living, house rent, &c., in the different places at which they are located. The pay and rations, authorized by law to officers, are understood to be for their maintenance on board ship, in which they are accommodated with rooms, fuel, candles, &c.; but when placed on shore at naval stations they have not such accommodations. . . . The allowances now made are regulated by a table, making them all equal, or as nearly so as practicable. . . . The allowances have, in most instances, been made by the Auditor in the settlement of accounts without any reference to this Department, he considering himself authorized so to do by the usage of the service, from the commencement of the naval establishment, with the approbation and sanction of the Secretary of the Navy." American State Papers, Class VI, Naval Affairs, Vol. 1, p. 797. The subject was subsequently brought to the attention of Congress by the report of the Secretary of the Navy to the Senate, January 1, 1825, American State Papers, Naval Affairs, Vol. 2, p. 40; by the letter of the Secretary to the chairman of the House Committee on Naval Affairs, February 2, 1826, Ib., p. 626; by the communication of the Fourth

Auditor of the Treasury, May 28, 1830, which was trans-mitted to Congress, Ib., Vol. 3, p. 685, the latter being accom-panied by a table showing every kind of allowance made under the regulations and orders of the Navy Department. The same facts are disclosed by the report of Amos Kendall, the Fourth Auditor of the Treasury, February 5, 1835, to the Secretary of the Navy, and transmitted by the latter to the House of Representatives in conformity with a resolution of that body. The latter report embodies a statement, in detail, showing the regular pay, rations, and allowances of all com-missioned officers of the navy according to the laws and regu-lations then in force. Ex. Doc. 192, H. R. Navy Department 23d Congress, 2d Session.

Thus matters stood until the passage of the act of March 3, 1835, 4 Stat. 753, regulating (and increasing) the pay of the navy, by which allowances of every description were prohi-bited. The second section of that act provided that "no allowance shall hereafter be made to any officer in the naval service of the United States for drawing bills, for recovering or disbursing money, or transacting any business for the govern-ment of the United States, nor shall he be allowed servants, or pay for servants, or clothing or rations for them, or pay for the same; nor shall any allowance be made to him for rent of quarters, or to pay rent for furniture, or for lights, or fuels, or transporting baggage. It is hereby expressly declared that the yearly allowance provided in this act is all the pay, com-pensation, and allowance that shall be received under any cir-cumstances whatever by any such officer or person, except for travelling expenses when under orders, for which ten cents per mile shall be allowed." 4 Stat. 757.

This prohibition of allowances continued in force until the act of April 17, 1866, making appropriations for the naval service. The second section of that act provided "that so much of the second section of an act entitled 'An act to reg-ulate the pay of the navy of the United States,' approved March three, 1835, as prohibits any allowance to any officer in the naval service for rent of quarters, or for furniture, or for lights, or fuel, or transporting baggage, and all acts or parts

of acts ·authorizing the appointment of navy agents, be, and the same are hereby, repealed." 14 Stat. 33, 38, c. 45.

After the passage of that act Secretary Welles issued the order which the government now assails as unauthorized by law. It is as follows:

"[General Order No. 75.]
"NAVY DEPARTMENT, May 23, 1866.

"Congress having, in view of the call for increased compensation for officers of the navy, repealed the law which prohibited any allowance to them 'for rent of quarters or to pay rent for furniture, or for lights and fuel, &c.,' the Department, in order to prevent a recurrence of the irregularities, abuses, and arbitrary allowances which occasioned the prohibition, deems it proper to establish a fixed rate of compensation in lieu of the extra allowances which were prohibited by the law now repealed. Accordingly, from and after the first day of June proximo, officers who are not provided with quarters on shore stations, will be allowed a sum equal to thirty-three and one-third per centum of their pay in lieu of all allowances, except for mileage or travelling expenses under orders; and those provided with such quarters, twenty per centum of their pay in lieu of said allowances.

"The act of March 3, 1865, having increased the pay of midshipmen and mates, the allowances hereby authorized will not be extended to them.

"GIDEON WELLES,
"*Secretary of the Navy.*"

This order was, no doubt, issued in the belief that the legal effect of the repeal of that part of the act forbidding allowances "for rent of quarters, or for furniture, or for lights, or fuel, or transporting baggage," was to reinvest the Department with the authority it had prior to the act of 1835. That act, upon its face, recognized the fact that such allowances had theretofore been made, and its object was to forbid them in the future. When the act of 1866 simply removed the prohibition contained in the act of 1835, the effect was, without formal

words for that purpose, to restore the law as it was before the passage of the latter act. Such is the rule where the effect of the repealing statute is not by its own terms, or by some general statute, limited to the abrogation of the act repealed. 1 Blackstone, 90; 1 Kent, 460; Bouvier's Bacon's Abridgment, Title Statute, D; *Commonwealth* v. *Churchill,* 2 Met. 118; *Van Denburgh* v. *Village of Greenbush,* 66 N. Y. 1. The general rule was never modified by Congress until the passage of the act of February 25, 1871, now § 12 of the Revised Statutes, which declared that "whenever an act is repealed which repealed a former act, such former act shall not thereby be revived, unless it shall be expressly so provided." 16 Stat. 431, c. 71. It is scarcely necessary to say that the act of 1871 cannot control the present case, for the order of Secretary Welles, and the settlement under it with Philbrick, both occurred before its passage. And for the same reason, this case is unaffected by the 4th section of the act of July 15, 1870, (now § 1558 Rev. Stat.,) which provides that the pay prescribed therein for officers of the navy, shall be their full and entire compensation, and that (with certain exceptions not material to be here noticed) "no additional allowance shall be made in favor of any of said officers on any account whatever, and all laws or parts of laws authorizing any such allowances shall, on 1st of July, 1870, be repealed." 16 Stat. 332, c. 295.

Notwithstanding the order of Secretary Welles was in harmony with the long-established practice of the Navy Department for many years prior to the passage of the act of 1835, it is contended that such a practice never has had support in an act of Congress; and that, without legislative sanction, the Secretary of the Navy was without authority to establish an arbitrary rule for the distribution of moneys appropriated in gross for specified objects connected with the naval service, and could, in no event, make allowances beyond the actual cost incurred by the officer in whose behalf they were made. It is a sufficient answer to these propositions to say that the power of the Secretary to establish rules and regulations for the apportionment of the sums set apart by Congress, in gross,

for such objects as those involved in the allowances here in dispute, having been frequently exercised prior to 1835, without objection by the legislative branch of the government; and since that act, as well as the one of 1866, is an implied recognition of the practice established in the Navy Department prior to 1835, we are not disposed, at this late day, to question the validity of the order of May 23, 1866. That order was in accordance with the construction which the Executive Department, for many years prior to 1835, placed upon the various statutes relating to the naval establishment and defining the powers of the Secretary of the Navy. A contemporaneous construction by the officers upon whom was imposed the duty of executing those statutes is entitled to great weight; and since it is not clear that that construction was erroneous, it ought not now to be overturned. See *Hahn* v. *United States*, 107 U. S. 405, and *Brown* v. *United States*, 113 U. S. 571, and authorities cited in each case.

As these views lead to an affirmance of the judgment, it is unnecessary to consider whether, after the account of the appellee for commutation of quarters, furniture, lights, and fuel, between November 12, 1869, and June 30, 1870, had been finally stated and closed, and after he had been paid the amount allowed him, the Second Comptroller had authority to open it upon the ground of error therein arising from mere mistake of law. Nor need we determine whether errors in accounts so stated, closed and settled by payment, could be corrected otherwise than by regular judicial proceedings instituted for that purpose by the United States against the appellee.

*Judgment affirmed.*