### SWENDIG et al. v. WASHINGTON WATER POWER CO.

(Circuit Court of Appeals, Ninth Circuit. July 3, 1922. Rehearing Denied August 7, 1922.)

3769.

Electricity ☞4—Telegraphs and telephones ☞9—Permits granted by Secretary of the Interior for construction of transmission and telephone lines across Indian reservation held not terminated by issuance of patents.

Permits granted by the Secretary of the Interior to a power company to construct and maintain an electric power transmission line across a certain Indian reservation, under Act Feb. 15, 1901 (Comp. St. § 4946), authorizing the Secretary of the Interior to grant such permission, and making the permission revocable in the discretion of the Secretary or his successor, and to construct telephone lines across the reservation, under Act March 3, 1901, § 3 (Comp. St. §§ 4191, 4240), under which the company had constructed and had for many years maintained a costly

plant, were not terminated by the issuance of patents to persons who had made homestead filings on land within the reservation, across which the power and telephone lines had been constructed with notice of the existence of such transmission and telephone lines, in the absence of revocation of permits by the Secretary of the Interior.

Appeal from the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Consolidated actions by the Washington Water Power Company against John Swendig, against James W. Miller, against Remigus Grab, and against Anthony Kerr. Decree for plaintiff, and defendants appeal. Affirmed.

The appellee, a corporation engaged in the generation and distribution of electricity in the states of Idaho and Washington, filed, prior to July 7, 1902, an application with the Department of the Interior for a permit for a right of way across, and for permission to construct and maintain, an electric power transmission line over and across, the Cœur d' Alene Indian reservation. The application was made in pursuance of the provisions of the Act of Congress of February 15, 1901 (31 Stat. 790 [Comp. St. § 4946]), which act is as follows:

"That the Secretary of the Interior be, and hereby is, authorized and empowered, under general regulations to be fixed by him, to permit the use of rights of way through the public lands, forest and other reservations of the United States, and the Yosemite, Sequoia, and General Grant National Parks, California, for electrical plants, poles, and lines for the generation and distribution of electrical power, and for telephone and telegraph purposes, and for canals, ditches, pipes and pipe lines, flumes, tunnels, or other water conduits, and for water plants, dams, and reservoirs used to promote irrigation or mining or quarrying, or the manufacturing or cutting of timber or lumber, or the supplying of water for domestic, public, or any other beneficial uses to the extent of the ground occupied by such canals, ditches, flumes, tunnels, reservoirs, or other water conduits or water plants, or electrical or other works permitted hereunder, and not to exceed fifty feet on each side of the marginal limits thereof, or not to exceed fifty feet on each side of the center line of such pipes and pipe lines, electrical, telegraph, and telephone lines and poles, by any citizen, association, or corporation of the United States, where it is intended by such to exercise the use permitted hereunder or any one or more of the purposes herein named: Provided, that such permits shall be allowed within or through any of said parks or any forest, military, Indian, or other reservation only upon the approval of the chief officer of the department under whose supervision such park or reservation falls and upon a finding by him that the same is not incompatible with the public interest: Provided further, that all permits given hereunder for telegraph and telephone purposes shall be subject to the provision of title sixty-five of the Revised Statutes of the United States, and amendments thereto, regulating rights of way for telegraph companies over the public domain: And provided further, that any permission given by the Secretary of the Interior under the provisions of this act may be revoked by him or his successor in his discretion, and shall not be held to confer any right. or easement, or interest in, to, or over any public land, reservation, or park."

The permission so applied for was given by the Secretary of the Interior prior to July 7, 1902; the lands over which the right was given being a part of the Cœur d' Alene Indian reservation, and then being unsurveyed and not open to settlement. Pursuant to the permission so given, the appellee constructed over and across the reservation a high-tension electric power transmission line extending from Spokane, Wash., to Boise, Idaho, in the Cœur d' Alene mining district, which line has ever since August, 1903, been used for the purpose of supplying electric power and energy to that mining district. At about the same time the appellee filed a similar application with the Department of the Interior for permission to construct a telephone line over and across the Indian reservation mentioned, under and pursuant to section 3 of the Act of Congress approved March 3, 1901 (31 Stat. 1058 [Comp. St. §§ 4191,

4240]), entitled "An act making appropriations for the current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes for the fiscal year ending June thirtieth, nineteen hundred and two, and for other purposes." Under that application the Secretary of the Interior granted the appellee the right to survey, locate, and maintain the telephone line desired, upon the payment of the damages and compensation assessed under his direction, amounting to $224, which sum was paid by the appellee into the office of the Commissioner of Indian Affairs. The telephone line was constructed upon the same poles as the electric power transmission line, and is used in connection with and as incidental to the power transmission line. For the purpose of constructing and maintaining the lines mentioned, a patrol road was built by the appellee during the years 1902 and 1903, along which its patrolmen pass in patrolling the lines and in keeping the same in repair and available for use.

Subsequently, and in the year 1906, an act of Congress was passed (34 Stat. 335), making provision for the allotment of lands to .members of the Cœur d' Alene tribe of Indians within the reservation, and the subsequent opening of the reservation to settlement. Later, and in the year 1910, the appellants made homestead filings upon their respective tracts of land within the reservation over and across which the power and telephone lines had been constructed, and they subsequently made entry and received patents for their said respective tracts of land. Thereafter the appellants denied any right on the part of the appellee to operate or maintain either of the said lines, and interfered with the exercise of those claims of right. Four several actions were brought by the appellee against the appellants, seeking injunctions restraining them from interfering with the asserted rights, and to . establish by decree that the permits granted continued in full force and effect. At the trial the four cases were consolidated and the issues practically reduced to one, which one was and is whether the patents issued to the appellants revoked and canceled the permits theretofore granted by the Secretary of the Interior to the appellee. The facts were not disputed, and each of the appellants admitted that the appellee's plant had been constructed and was in use at the time he first settled upon the land claimed by him.

James F. Ailshie, of Cœur d'Alene, Idaho, and Ray Agee, of Oakley, Idaho, for appellants.

John P. Gray, of Cœur d'Alene, Idaho, and Frank T. Post, of Spokane, Wash., for appellee.

Before ROSS, MORROW, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). Not only did the appellants,. at the time that they settled upon their respective tracts of land, have actual notice of the existence and operation of the appellee's transmission and telephone lines and incidental patrol road, but they are properly chargeable with actual knowledge of the law under and by authority of which those lines were constructed and were being operated, and of the right of the appellee to continue to operate them until the permission to do so should be revoked by the Secretary of the Interior, for the statute, as will be seen, in terms so declares. It expressly provides that the power conferred upon the Secretary should be exercised "under general regulations to be fixed by him," of which latter the appellants must be held to have had notice. And the statute itself declares that any permission given by the Secretary under the provisions of the act—

"may be revoked by him or his successor in his discretion, and shall not be held to confer any right, or easement, or interest in, to, or over any public land, reservation, or park."

The question, therefore, we have to decide, is whether the permits under which the appellee constructed and for years maintained its costly plant were legally terminated by the issuance of the government's patents to the appellants. It is conceded, or seems to be conceded, by counsel for the appellants, that, had the patents in terms excepted the permits that had been theretofore granted by the Secretary of the Interior in pursuance of the act of Congress that has been referred to, the previously existing rights of the appellee would not have been affected.

The government could not grant, by patent or otherwise, what it did not own, nor anything more than it owned. It owned the fee of the lands upon and over which the appellee's plant was constructed and was being operated, subject to the terms and conditions expressly declared in the statute and the regulations of the Interior Department under and pursuant to which such plant was constructed and was being operated, of which record evidence all parties, including the appellants, settlers, and patentees, had full notice. The permission granted to the appellee was subject to revocation at any time by the then Secretary of the Interior or his successor; but that was the sole condition to the continuous existence of the rights of way granted, and that reserved power on the part of the grantor was never exercised prior to the issuance of the patents to the appellants, nor since, so far as appears. Whether the rights of way could be revoked by the present or any other successor of the then Secretary is not for consideration in the present case.

We see no force in the contention of the counsel for the appellants that the grants of rights of way to the appellee were mere licenses. The espediente which formed the basis of the claim in De Haro v. United States, 5 Wall. 599, 18 L. Ed. 681, was, as held by the Supreme Court (5 Wall. 622 et seq., 18 L. Ed. 681), nothing more, nor was it intended to be anything more, than a permit to pasture certain land temporarily until the ejidos were measured; in other words, a mere permissive temporary occupation of land for grazing purposes, which the Supreme Court said in its opinion (5 Wall. 627, 18 L. Ed. 681)—

"the Governor was willing should be in writing, instead of by parol, to enable the licensees to enjoy their possession with greater security. And this leads us to a consideration of the law on the subject of licenses."

The court then proceeded to declare the law, saying:

"There is a clear distinction between the effect of a license to enter lands, uncoupled with an interest, and a grant. A grant passes some estate of greater or less degree, must be in writing and is irrevocable, unless it contains words of revocation; whereas, a license is a personal privilege, can be conferred by parol or in writing, conveys no estate or interest, and is revocable at the pleasure of the party making it. There are also other incidents attaching to a license. It is an authority to do a lawful act, which. without it, would be unlawful, and while it remains unrevoked is a justification for the acts which it authorizes to be done. It ceases with the death of either party, and cannot be transferred or alienated by the licensee, because it is a personal matter, and is limited to the original parties to it. A sale of the lands by the owner instantly works its revocation, and in no sense is it properly descendible to heirs. These are familiar and well-established principles of law, hardly requiring a citation of authorities for their vindica-

tion; but, if they are needed, they will be found collected in the notes to 2 Hare & Wallace's American Leading Cases, commencing on page 376. We are not aware of any difference between the civil and common law on this subject."

It would hardly be contended that the appellee could not have at any time transferred or conveyed its power and telephone lines, with all incidental rights pertaining thereto, to some other company or person, or that its rights in the premises would not have passed to its creditors in the event it had been unsuccessful in its business.

We see no merit in the appeal, and accordingly the decree is affirmed.