## SWENDIG ET AL. *v.* WASHINGTON WATER POWER COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 142.  Argued February 21, 1924.—Decided May 26, 1924.

1. The Act of March 3, 1901, providing for granting rights of way for telephone lines, does not apply to wires strung on the poles of an electric power line and used only in connection with its operation and maintenance. P. 327.

2. The Act of February 15, 1901, authorizes the Secretary of the Interior, under general regulations to be fixed by him, to permit the use of rights of way through the public lands, reservations and certain parks, for electric power lines, etc., and declares that such

permission may be revoked by the Secretary who gave it or his successor, in his discretion, and shall not be held to confer any right, or easement, or interest in, to, or over any public land, reservation, or park. *Held:*

(a) The right of use continues until the permit has been revoked by the Secretary. P. 329.

(b) The Secretary has power to adopt a regulation that final disposition by the United States of any tract traversed by a permitted "right of way" shall revoke the permission *quoad* that tract; and to change the regulation by providing that tracts when so disposed of shall remain subject to a right of use previously permitted until the permission has been specifically revoked under the act. *Id.*

(c) Where lands of an Indian reservation on which an electric transmission line was constructed and in operation under such a permit, were thrown open and entered under the homestead law, at a time when a regulation provided that final disposition of the tracts should revoke the permit *pro tanto,* and were afterwards conveyed to the entrymen by patents making no reservation of the permit, but not until after the regulations had been amended to continue the permission in such cases until specifically revoked,—the patentees took subject to the permit. P. 330.

281 Fed. 900, affirmed.

APPEAL from a decree of the Circuit Court of Appeals which affirmed a decree of the District Court enjoining the appellants from interfering with the operation and use of the appellee's (plaintiff's) electric power line, and quieting the appellee's right to use the land traversed by it, under permits from the Secretary of the Interior.

*Mr. James F. Ailshie* for appellants.

Under the act of Congress, appellee acquired no easement, interest or title, but only a license.

Its present rights must be construed as the rights of any other individual operating under a revocable license, and its rights may be extinguished in the same manner and under the same condition as those of a licensee under a private individual.

If the United States could revoke this permit or license at its option, clearly it is revoked by any act on the part

of the United States which shows an intent to revoke, or which is inconsistent with the continued existence of the license.

Any act of the Government which withdraws the lands from the category of "public land, reservation, or park" terminates the permit, since such a permit can only be granted over such lands.

It is an elementary principle of law that for a license to exist the licensor must have some right to or interest in the thing upon which the license is to operate, and that when such right or interest of the licensor is extinguished, so also is the license extinguished. It appears to have been uniformly held that an absolute conveyance of land revokes any license to the use thereof. *De Haro* v. *United States,* 5 Wall. 599; 18 Am. & Eng. Encyc. of Law, p. 1141.

When a patent, absolute upon its face, has been issued by the Land Department and delivered and accepted by the patentee, the title of the United States goes with it and all right to control the title or land, or to decide on the right to the title, has passed from the Executive Department of the Government. *United States* v. *Schurz,* 102 U. S. 378; *Moore* v. *Robbins,* 96 U. S. 530; *Iron Silver Min. Co.* v. *Campbell,* 135 U. S. 286; *United States* v. *Stone,* 2 Wall. 525.

At the time when the Indian Reservation was thrown open to settlement, the regulations of the Land Department provided that a patent issued to a settler would revoke any permit outstanding on the land under this statute. This regulation was in effect when these appellants made their homestead entries, and when one of them made final proof.

The Land Department changed the regulations (41 L. D. 152) later; but if it be granted that it could change the construction of the statute, it could not thereby affect the rights of these appellants.

Entry by a settler upon public land, and the receipt of a certificate of entry from the Land Department, instantly

segregates the land from the public domain; and a patent subsequently issued takes effect as of the date of the entry. *Witherspoon* v. *Duncan,* 4 Wall. 210; *Wirth* v. *Branson,* 98 U. S. 118; *Cornelius* v. *Kessel,* 128 U. S. 456.

This identical question came up before the Land Department in a case wherein appellee was also a party. *Nye* v. *Washington Water Power Co.* (April 23, 1921).

Mere occupation and improvement of public land does not confer a vested right in the land so occupied, so that the occupant can maintain a right of possession against the United States or the grantee of the United States. *Northern Pac. R. R. Co.* v. *Smith,* 171 U. S. 260; *Johnson* v. *Drew,* 171 U. S. 93.

The principle that one should be estopped from asserting a right to property about which he has, by his conduct, misled another, cannot be invoked against the United States, or by one who, at the time the improvements were made, was acquainted with the true character of his title or with the fact that he had none. *Steel* v. *Smelting Co.,* 106 U. S. 447.

The Act of March 3, 1901, 31 Stat. 1083, applies only to telephone lines operated for the use and benefit of the public at large, where the company operates them as a business and charges tolls, and not for its own private use as an accessory to some other business.

Appellee should pay just compensation for an easement.

*Mr. Frank T. Post,* with whom *Mr. John P. Gray* was on the brief, for appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Appellee is a corporation engaged in the generation and distribution of electrical energy in Washington and Idaho. It has a high tension power transmission line extending from Spokane, Washington, to Burke, Idaho, in the Cœur d'Alene Mining District. The line was constructed in 1902 and 1903. A portion of it was located across certain

lands then unsurveyed and constituting a part of the
Cœur d'Alene Indian Reservation. Telephone wires were
strung on the poles carrying the power line for use in con-
nection with the operation and maintenance of that line.
And there was constructed a patrol road necessary for the
maintenance of the power line. Ever since its construc-
tion, the power line has been used to furnish electrical
energy in that district.

July 7, 1902, the Secretary of the Interior under au-
thority of the Act of February 15, 1901, c. 372, 31 Stat.
790, granted appellee a permit for the use of a right of
way upon which to construct and maintain the power line
through the reservation; and about the same time, he
granted appellee a right of way for the construction and
operation of a telephone line through the reservation, un-
der authority of the Act of March 3, 1901, c. 832, 31 Stat.
1083.

An Act of Congress of June 21, 1906, c. 3504, 34 Stat.
335, provided for the allotment of lands within the reser-
vation to members of the Cœur d'Alene Tribe, and author-
ized the opening to settlement and entry of the lands re-
maining undisposed of. Pursuant to the President's
proclamation, this was done in May, 1910. Appellants
respectively made homestead entries of certain of those
lands across which the power line had been constructed,
and later received patents therefor.[1] The patents are
absolute in form and contain no exception or reservation
in respect of the power line or privileges granted appellee.
The appellants, denying the right of appellee after patents
to operate and maintain the power line across the lands
described in their patents, interfered with and threatened
to prevent its use. Appellee brought a suit in the United

---

[1] Dates of filings and patents are as follows: Swendig filed May 2,
1910; patent issued October 30, 1913. Miller filed May 4, 1910;
patent issued January 23, 1913 [1914]. Grab filed May 7, 1910;
patent issued September 24, 1912. Kerr filed December 22, 1910;
patent issued October 15, 1918.

States District Court for Idaho against each of the appellants to enjoin such interference, and to have it decreed that the patents did not revoke or affect the permits, and that they are in full force and effect. Jurisdiction was invoked on the ground that the suits arose under the laws of the United States above referred to. The four cases were tried together. The District Court granted appellee the relief prayed. Its decree was affirmed by the Circuit Court of Appeals. 281 Fed. 900. The case is here on appeal under § 241 of the Judicial Code.

The question to be decided is whether, as to the lands described therein, the patents issued to appellants revoked or canceled the permits theretofore granted to appellee by the Secretary.

The Act of March 3, 1901, 31 Stat. 1083, relating to rights of way for the construction of telephone lines does not apply. The telephone wires are used only in connection with the operation and maintenance of the power line. Appellee's rights are to be determined under the Act of February 15, 1901. Its material provisions are:

" That the Secretary of the Interior be, and hereby is, authorized and empowered, under general regulations to be fixed by him, to permit the use of rights of way through the public lands, forest and other reservations of the United States, and the Yosemite, Sequoia, and General Grant National parks, California, for electrical plants, poles, and lines for the generation and distribution of electrical power, and for telephone and telegraph purposes, and for canals, ditches, pipes, and pipe lines, flumes, tunnels, or other water conduits, and for water plants, dams, and reservoirs used to promote irrigation or mining or quarrying, or the manufacturing or cutting of timber or lumber, or the supplying of water for domestic, public, or any other beneficial uses to the extent of the ground occupied by such canals, ditches, flumes, tunnels, reservoirs, or other water conduits or water plants, or electrical

or other works permitted hereunder, and not to exceed fifty feet on each side of the marginal limits thereof, or not to exceed fifty feet on each side of the center line of such pipes and pipe lines, electrical, telegraph, and telephone lines and poles, by any citizen, association, or corporation of the United States, where it is intended by such to exercise the use permitted hereunder or [for] any one or more of the purposes herein named: . . . *And provided further,* That any permission given by the Secretary of the Interior under the provisions of this Act may be revoked by him or his successor in his discretion, and shall not be held to confer any right, or easement, or interest in, to, or over any public land, reservation, or park."

When the homestead entries were made by appellants, the regulation of July 8, 1901, was in force. Paragraph 11 (31 L. D. 17) contains the following: "The final disposal by the United States of any tract traversed by the permitted right of way is of itself, without further act on the part of the Department, a revocation of the permission so far as it affects that tract, and any permission granted hereunder is also subject to such further and future regulations as may be adopted by the Department." August 24, 1912, before the patents were issued, this provision was superseded by the following regulation (41 L. D. 152, par. 9): "The final disposal by the United States of any tract traversed by a right of way permitted under this act shall not be construed to be a revocation of such permission in whole or in part, but such final disposal shall be deemed and taken to be subject to such right of way until such permission shall have been specifically revoked in accordance with the provisions of said act." At the same time, the Secretary by regulation required that all patents issued have on their face a notation of prior permits.[2]

---

[2] The order with respect to notations was recalled and vacated by the regulations approved April 14, 1915 (44 L. D. 6). See also 45 L. D. 477.

It was competent for Congress to make subsequent homestead entries subject to the Act of February 15, 1901, and to the regulations fixed by the Secretary. And undoubtedly the power and authority of the Secretary under the act may be so exercised as to affect the rights and limit the title of subsequent homestead entrymen. Within the scope of the authorization, he may make, and from time to time change, regulations for the administration of the act. The rights of appellants as entrymen were subject to the proper exercise of that power. The regulation in effect when appellants settled on the land expressly provided that permissions granted were subject to further and future regulation. At that time, the right of way was occupied and used for the operation of the power line. When the patents issued, that regulation had been superseded by the one of August 24, 1912.

Appellants contend that appellee acquired a mere license temporarily to use the right of way through the lands in question, and that the patents without more revoked the license and deprived appellee of its right of way over the lands therein described. In support of this contention, they stress the concluding clause of the act, stating that the permission given "shall not be held to confer any right, or easement, or interest in, to, or over any public land, reservation, or park." The purpose of the act is to grant to the Secretary power "to permit the use of rights of way" through the lands referred to. And, in order that control over them may be retained, it is provided that the Secretary in his discretion may revoke such permits. The enterprises mentioned in the act involve expensive and permanent construction. The use of land necessary for the undertakings specified is to be distinguished from mere licenses to travel over, graze cattle on, or otherwise use or occupy land without investment for construction or improvements. Plainly, the piecemeal revocation of the right of way, whenever a patent is

issued to a settler along the line, would increase the financial burden and add elements of risk to the investments, and so be inconsistent with the purpose of the act. The clause above quoted should be read to promote and advance, not to defeat, the legislative purpose to permit the use of rights of way through public lands for the industries and utilities mentioned. It is included from an abundance of caution to support and safeguard the Secretary's power of revocation. It means that the permissions given shall not be deemed to confer any right that may not be revoked by him in the exercise of his discretion. There is no other enactment providing for the termination of the use of the rights of way. The right to use continues until the permission given by the Secretary is revoked by him.

As the sole power of revocation was committed to his discretion, it was within the power of the Secretary to determine that final disposal of the lands would operate to revoke the permission; and it was also within his power, by the regulation of August 24, 1912, to declare that final disposal shall not be deemed to be a revocation, but shall be subject to the right of way until such permission shall have been specifically revoked. Upon elaborate consideration, in 1912, the Secretary held that the provision of the regulation first above quoted was directly contrary to the purpose of the statute. He said, " It discouraged development by making the title of the permittee subject to that of the final patentee of the land occupied under the permit, . . . To effectuate the purpose of the statute it is necessary that a permit once given should be superior to the rights of the subsequent patentee of the land until such time as the permit is duly revoked by the Secretary of the Interior in the exercise of the express authority given by the statute. . . . The regulations hereinbefore made [41 L. D., *supra*] will protect permittees from any demands that might

otherwise be made upon them by subsequent claimants of the lands over which the permits give a right of way." (Letter of August 23, 1912, from the Secretary of the Interior to the Commissioner of the General Land Office.)

The regulation is still in effect. The construction and application of the act so made and provided for have been followed since that time. If the meaning of the act were not otherwise plain, this interpretation would be a useful guide to the ascertainment of the legislative intention. It is a " settled rule that the practical interpretation of an ambiguous or uncertain statute by the Executive Department charged with its administration is entitled to the highest respect, and, if acted upon for a number of years, will not be disturbed except for very cogent reasons." *Logan* v. *Davis,* 233 U. S. 613, 627.

Appellants contend, and it is true as a general rule, that when, conformably to the laws, entry is made and certifi-. cate given, the land covered ceases to be a part of the public lands (*Witherspoon* v. *Duncan,* 4 Wall. 210, 219), and that, when a patent issues in accordance with governing statutes, all title and control of the land passes from the United States. *United States* v. *Schurz,* 102 U. S. 378, 396. But we hold that, under the act and the regulation made pursuant to it and in force when the patents issued, these rules do not operate to strike down rights, subject to which, under the law, the lands are patented. Under the permission of the Secretary, the power line had been constructed and was maintained on the right of way over the lands in question for a long time before the reservation was opened for settlement. The entries were made subject to the regulations then in force, and were affected by the provision that " any permission granted hereunder is also subject to such further and future regulations as may be adopted by the Department." The fact that the patents did not have thereon a notation of the prior per-

mit is not controlling. Under the regulation then in force, final disposal did not revoke the permit, but was made subject to the use of the right of way for the power line. It was intended that the patent should not extinguish the earlier permission given by the Secretary. The issuing of the patents without a reservation did not convey what the law reserved. They are to be given effect according to the laws and regulations under which they were issued. See *Stoddard* v. *Chambers*, 2 How. 284, 318; *Jamestown & Northern R. R. Co.* v. *Jones*, 177 U. S. 125; *Smith* v. *Townsend*, 148 U. S. 490.

*Decree affirmed.*