**WILBUR, Secretary of the Interior, v. TEXAS CO.**

**No. 4939.**

Court of Appeals of District of Columbia.

Argued March 7, 1930.

Decided April 7, 1930.

VAN ORSDEL, J., dissenting in part.

Leo A. Rover, John W. Fihelly, E. C. Finney, and O. H. Graves, all of Washington, D. C., for appellant.

Frank Davis, Jr., and Wm. J. Neale, both of Washington, D. C., and Edward M. Freeman, of Denver, Colo., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.

A bill of complaint was filed by the Texas Company as plaintiff below against the Secretary of the Interior praying for an injunction to restrain the Secretary from enforcing a certain order issued by him with relation to oil produced upon the public domain of the United States. The Secretary filed a motion to dismiss the bill as upon a demurrer. The lower court overruled the motion. The Secretary elected to stand upon his exceptions, and the court granted a perpetual injunction as prayed in the bill. This appeal followed.

The bill of complaint discloses in substance the following facts: On June 4, 1925, an oil and gas prospecting permit was issued by the Secretary of the Interior to one Fred W. Klindt under section 13 of the Act of Congress approved February 25, 1920, entitled "An Act To promote the mining of coal, phosphate, oil, oil shale, gas, and sodium on the public domain" (41 Stat. 437, 441 [30 USCA § 221]), known as the "leasing law," whereby the permittee was entitled to prospect for oil and gas upon certain tracts of land of the public domain of the United States in the state of Wyoming, in the so-called Oregon Basin oil field. On June 7, 1926, Klindt entered into an operating agree-

788

ment with one W. O. Taylor, providing for the drilling by Taylor as operator of test wells upon the leased lands and the production of oil therefrom, and further providing that Taylor should be the owner of all the oil so produced by him except for the oil reserved by the United States as its royalty, and except also for the oil reserved by Klindt as his royalty. By virtue of various intervening assignments, the Cody Petroleum Company became and yet remains the assignee and successor in interest of Taylor under his operating agreement with Klindt, subject however to a royalty right held by Taylor. The Cody Petroleum Company as operator under these assignments drilled a number of producing oil wells upon the lands, and Klindt thereby became entitled to receive leases from the government under the provisions of section 14 of the Leasing Act (30 USCA § 223). Accordingly, on March 19, 1928, a lease for one-fourth of the described lands was issued to Klindt as lessee by the Secretary of the Interior, entitling him to produce and dispose of all the oil and gas deposits in or under the described lands, upon a royalty of 5 per centum thereof payable to the government in kind or in value. It was stipulated in the lease that the lessee should not assign the lease or any interest therein or sublet any portion of the leased premises except with the consent in writing of the Secretary of the Interior, and that the lessee should file with the Secretary copies of all sales contracts for the disposition of oil and gas produced under the lease, and that in event the United States should elect to take its royalties in money instead of in oil or gas, the lessee should not sell or otherwise dispose of the products of the land leased except in accordance with a sales contract or other method first approved by the Secretary of the Interior. Afterwards, to wit, on September 10, 1928, a lease for the residue of the lands was issued to Klindt as provided by statute, upon a royalty of 12½ per cent. of the production either in kind or value, and subject to similar conditions as those in the preceding lease.

On April 21, 1928, the Cody Petroleum Company, as the present operator, entered into a contract with the Texas Company providing for the sale to the latter company of a minimum of 1,000 barrels of oil per day and maximum of 2,000 barrels per day of the oil produced from the leased lands, at a price of 53 cents per barrel at the well, for a period of five years from the date of the contract. On or about June 15, 1928, the Cody Petroleum Company, in response to a de-

mand made by the Secretary of the Interior, submitted the sales contract aforesaid to the Secretary because, and only because, the Secretary claimed and asserted the authority to demand such submission and to pass upon the contract and to approve or disapprove of the same. The Secretary thereupon disapproved of the contract, upon the sole and only ground that the price of the oil fixed thereby, to wit, 53 cents per barrel, was not adequate. The Secretary stated that he would not approve of a sale of oil produced upon the public domain in the Oregon Basin field at a price less than 85 cents per barrel, and gave notice that if the Cody Petroleum Company should, in violation of the aforesaid order, deliver or attempt to deliver oil produced from the leased lands to the Texas Company pursuant to the sales contract, or otherwise than in accordance with the Secretary's order, he would cause the producing wells of the company to be sealed up, and would shut down the operation of the leased lands, thereby preventing the company from producing and delivering oil to the Texas Company in compliance with the sales contract aforesaid.

The Texas Company denies that the Secretary of the Interior possesses any authority under the Leasing Act to fix the price at which an operator shall sell the oil owned by him after deducting the government's royalty oil from the production, or after payment of the government's royalty in cash, and asserts furthermore that the government has not made any election with reference to the manner of payment of its royalty on the oil, but that in fact up to the date of its said order the government has taken payment in money of its royalty on oil produced from the lands. The company also alleges that it has constructed a large refinery at Cody in the Oregon Basin field, not only in reliance on obtaining the oil by the contract provided to be delivered, but also in particular reliance upon the price for such oil therein specifically fixed, and that it will suffer irreparable injury in case the Secretary of the Interior proceeds to carry out his order by sealing the producing wells upon the lands and cutting off the supply of oil upon which it has relied as aforesaid, and preventing it and the Cody Petroleum Company from performing their contract relating to the oil production therefrom. It accordingly prayed for an injunction permanently enjoining the Secretary of the Interior and his subordinates and agents from enforcing the aforesaid order, and from interfering whether directly or indirectly with the performance by the Cody Petroleum Com-

pany of its contract for the delivery of the oil to the Texas Company according to their contract.

We are of the opinion that the bill of complaint filed by the Texas Company below failed to show a right to equitable relief in the case, and that the Secretary's motion to dismiss the bill should have been sustained.

It is provided by section 32 of the Leasing Act (30 USCA § 189): "That the Secretary of the Interior is authorized to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of this Act. * * *" Immediately following the enactment of the statute, to wit, on March 11, 1920, the Secretary of the Interior promulgated certain official "Regulations concerning oil and gas permits and leases, Authorized by Act of February 25, 1920." The regulations contain an approved form of "Lease of oil and gas lands under the act of February 25, 1920." Section 2 (d) of the form reads as follows: (In consideration of the foregoing, the lessee hereby agrees:) "To file with the Secretary of the Interior copies of all sales contracts for the disposition of oil and gas produced hereunder, except for production purposes on the land leased, and, in event the United States shall elect to take its royalties in money instead of in oil or gas, not to sell or otherwise dispose of the products of the land leased, except in accordance with a sales contract or other method first approved by the Secretary of the Interior." Afterwards, to wit, on July 1, 1926, the Secretary issued official "Operating Regulations to Govern the Production of Oil and Gas," section 2 (s) of which provides as follows: "The lessees shall file with the Secretary of the Interior through the Supervisor or his representative, triplicate signed copies of contracts for the disposition of oil, natural gas, and natural-gas gasoline produced, except that portion used for production purposes on the land leased, and in the event that the United States shall elect to take its royalties in money instead of in oil or gas or gasoline, he shall not sell or otherwise dispose of the products of the land leased except in accordance with the sales contract or other method first approved by the Secretary of the Interior."

The prospecting permit which was issued to Klindt on June 4, 1925, followed the original regulations, and the leases which were issued to him on March 19, 1928, and September 10, 1928, respectively, followed the same regulations, which had then been also approved by the regulations of July 1, 1926. Section 2 (d) was copied verbatim into each of these leases as one of the stipulations thereof undertaken by the lessee. In the operating agreement whereby Klindt granted to Taylor the right to operate under the leases, and assigned the leases to him, it was stipulated by Taylor as operator that he would "keep and perform the terms and conditions of the aforesaid prospecting permit and aforesaid Government leases." The assignment of the operating permit to the Cody Petroleum Company is not exhibited by the bill of complaint, but inasmuch as it was approved by the Secretary of the Interior it may be assumed that it contained a similar stipulation.

These facts disclose a persuasive contemporaneous construction of the Leasing Act, with especial reference to the present issue, extending from the enactment of the law in 1920 to the date of the sales contract now in question, by the officers upon whom was imposed the duty of executing the enactment, with the acquiescence, so far as the present record indicates, of the parties who dealt with the government respecting the subject-matter. "A contemporaneous construction by the officers upon whom was imposed the duty of executing those statutes is entitled to great weight; and, since it is not clear that that construction was erroneous, it ought not now to be overturned." United States v. Philbrick, 120 U. S. 59, 7 S. Ct. 413, 417, 30 L. Ed. 559. "In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect." Edwards, Lessee, v. Darby, 12 Wheat. 206, 210, 6 L. Ed. 603.

Moreover, the construction placed upon the act by the Secretary of the Interior is not unreasonable, for it enables the government to prevent a "chilling" of the market price of oil produced in the Oregon Basin field, such as might reduce the amount of the royalties received by the government when taken "in value," and might also tend to discourage the development of the field by prospectors and operators. These considerations are not foreign to the legislative purposes expressed by section 32 of the act (30 USCA § 189), granting the Secretary of the Interior authority "to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of this Act." We

790

have not overlooked the action of the United States Senate on September 3, 1919, in failing to pass an amendment to the Leasing Act specifically authorizing the President to fix the selling price of all products derived from lands leased under the act. Congressional Record, vol. 58, pp. 4733–4736. We think, however, it is uncertain how far this action should reflect upon the construction of the act as passed. And we are of the opinion that under all the circumstances the courts should not interfere with the exercise of the authority claimed by the Secretary.

Moreover, the question arises whether the Texas Company is entitled in equity to maintain its present suit under the circumstances. The Texas Company is seeking herein an injunction to restrain the Secretary of the Interior from enforcing a specific provision of a lease under which the oil in question is produced. The company never became a party to the lease, and does not stand in privity with the Secretary of the Interior in relation thereto. The record discloses that Klindt, who remains the lessee and is entitled to a royalty so long as oil is produced under the leases, and Taylor, the predecessor of the Cody Petroleum Company, as operator, who also retains a royalty interest in the oil production, and the Cody Petroleum Company, the present operator, are not made parties to the present record, and so far as appears are not engaging in the present contest. The Texas Company, as purchaser of the oil from the Cody Petroleum Company, is the sole party denying the validity of the sales-contract provision appearing in the lease. However, if Klindt and Taylor abide by this provision of the lease, and the Cody Petroleum Company does not contest it, the purchasing company cannot complain. And furthermore the Texas Company is not entitled to claim the benefits of some of the terms of the oil lease from which the rights of its vendor are derived while at the same time repudiating one of its specific obligations. Verde River Irrigation & Power District v. Work, Secretary of the Interior, 58 App. D. C. 58, 24 F.(2d) 886. We are of the opinion therefore that the company can have no standing in equity to raise the question upon which it bases its present case.

We therefore reverse the decree of the lower court, and remand the cause with directions to dismiss the bill of complaint.

VAN ORSDEL, Associate Justice (specially concurring).

I concur in the reversal of the decree in this case, solely upon the ground that the Texas Company is without standing in equity to maintain this action.

I dissent from the opinion of the majority of the court upholding the power of the Secretary to fix the price at which a producer shall sell his share of the oil, after the government royalty has been paid in terms agreeable to the Secretary.