**UNITED STATES ex rel. KNAUFF v. Mc-GRATH, Attorney General, et al.**

No. 192, Docket 21616.

United States Court of Appeals Second Circuit.

Argued March 6, 1950.

Decided March 28, 1950.

Swan, Circuit Judge, dissented.

See also 179 F.2d 628.

Gunther Jacobson, New York City, for relator-appellant.

Irving H. Saypol, New York City (David McKibbin and William J. Sexton, New York City, of counsel; Louis Steinberg and Lester Friedman, Immigration and Nat-

uralization Service, New York City), for respondents-appellees.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

FRANK, Circuit Judge.

■ Respondents in their brief concede that the applicable statutory provision is 8 U.S.C.A. § 154 which provides: "All aliens brought to this country in violation of law shall be immediately sent back * * * to the country whence they respectively came, on the vessels bringing them, unless in the opinion of the Attorney General immediate deportation is not practicable or proper." That "deportation" in that context includes "exclusion" seems clear on the face of the statute.[3]

Respondents also, on oral argument of this appeal, conceded that, on the pleadings as they now stand, we must take it as true that, as alleged in the petition, "it has been the invariable practice to stop *all* deportation proceedings" whenever a bill, such as Senator Langer's, has been introduced in either House of Congress. We italicize the word "all": It allows of no exceptions of cases, like this, in which an alien has been ordered to be excluded because the Attorney General, on confidential information, found that the alien's entry would be prejudicial to the interests of the United States. This "invariable practice" may be regarded in one (or both) of the following two ways:

(1) The practice constitutes an administrative interpretation of the Act to the effect that it is never "proper" in "the opinion of the Attorney General" not to suspend execution of an exclusion order when a Senator or Congressman introduces such a bill and that bill is still pending. Such a settled administrative interpretation, unless unreasonable or flatly contrary to the statute, has generally been given great weight,[4] especially when the statute, thus administratively interpreted, has been re-enacted by Congress.[5] 8 U.S.C.A. § 154 was re-enacted, with changes of no significance here, in 1944. It is most unlikely that Congress was unaware of this administrative interpretation, inasmuch as it related to the introduction of bills by Senators and Congressmen.

(2) 8 U.S.C.A. § 154 gives the Attorney General discretion to determine when "immediate deportation is not * * * proper." By the adoption of an "invariable practice," he has established a class of situations with respect to which he has always so exercised that discretion as to suspend deportation. That classification is entirely reasonable. To depart from it in a single instance is to act arbitrarily or capriciously, to abuse the administrative discretion.

3. See also 8 C.F.R. (1949 edition) Sec. 145.2.

4. See, e. g., U. S. v. Moore, 5 Otto 760, 95 U.S. 760, 763, 24 L.Ed. 588; U. S. v. Macdaniel, 7 Pet. 1, 14–15, 8 L.Ed. 587; U. S. v. Finnell, 185 U.S. 236, 243–244, 22 S.Ct. 633, 46 L.Ed. 890; U. S. v. Sweet, 189 U.S. 471, 473, 23 S.Ct. 638, 47 L.Ed. 907; U. S. v. Johnston, 124 U.S. 236, 237, 253, 8 S.Ct. 446, 31 L.Ed. 389; Hahn v. U. S., 107 U.S. 402, 405–406, 2 S.Ct. 494, 27 L.Ed. 527; U. S. v. Philbruck, 120 U.S. 52, 59, 7 S.Ct. 413, 30 L.Ed. 559; Copper Queen Mining Co. v. Arizona Board, 206 U.S. 474, 479, 27 S.Ct. 695, 51 L.Ed. 1143; Logan v. Davis, 233 U.S. 613, 627, 34 S.Ct. 685, 58 L.Ed. 1121; cf. U. S. ex rel. Hirschberg v. Cooke, 336 U.S. 210, 216, 69 S.Ct. 530; Hiatt v. Brown, 1950, 70 S.Ct. 495; U. S. v. American Trucking Ass'ns, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; Billings v. Truesdell, 321 U.S. 542, 552–553, 64 S.Ct. 737, 88 L.Ed. 917; U. S. v. Minnesota, 270 U.S. 181, 205, 46 S.Ct. 298, 70 L.Ed. 539; Swendig v. Washington Water Power Co., 265 U.S. 322, 331, 44 S.Ct. 496, 68 L.Ed. 1036; Kern River Co. v. U. S., 257 U.S. 147, 154, 42 S.Ct. 60, 66 L.Ed. 175; U. S. v. Shreveport Grain & El. Co., 287 U.S. 77, 84, 53 S.Ct. 42, 77 L.Ed. 175; State of Wisconsin v. Illinois, 278 U.S. 367, 413, 49 S.Ct. 163, 73 L.Ed. 426.

5. See, e. g., Copper Queen Mining Co. v. Arizona Board, 206 U.S. 474, 479, 27 S.Ct. 695, 51 L.Ed. 1143; U. S. v. G. Falk & Brother, 204 U.S. 143, 152, 27 S.Ct. 191, 51 L.Ed. 411; U. S. v. Cerecedo Hemanos Y Compania, 209 U.S. 337, 339, 28 S.Ct. 532, 52 L.Ed. 821; National Lead Co. v. U. S., 252 U.S. 140, 146, 40 S.Ct. 237, 64 L.Ed. 496; U. S. v. Bailey, 9 Pet. 238, 255, 9 L.Ed. 113.

■ Whichever of the two foregoing views we accept, the refusal to suspend action here, on the record facts, was improper. In U. S. ex rel. Pirinsky v. Shaughnessy, 2 Cir., 177 F.2d 708, 709, an alien, a resident of this country, was arrested and taken in custody in deportation proceedings. On his application for release on bail, pending decision, the Attorney General, purporting to exercise the discretion granted him by 8 U.S.C.A. § 156, fixed bail at $25,000. The alien sought habeas corpus. We held that bail in excess of $5,000 was unreasonable, saying: "It was brought out at the argument before us that the bail ultimately set was uniquely high in this type of proceeding," adding that "there is nothing in the record to justify the singling out of the individual for unusual treatment."

■ That ruling is applicable here. It accords with many cases deciding that arbitrary use of administrative authority is invalid.[6] It is worth recalling that that doctrine, now a vital part of American liberties, received its clearest enunciation in the famous case of the Chinese laundryman.[6a]

To be sure, he was a resident alien;[6b] and it may be—although we need not and do not here so decide—that Congress could constitutionally empower an official to use his sheer personal whim or caprice in dealing with aliens (like relator) stopped at the border. But, absent an explicit congressional grant of such arbitrary power, we think it cannot be implied.[7]

■ In such circumstances as this, habeas corpus may be employed not to procure relator's release but to prevent the improper course respondents intended to pursue.[8] For the habeas corpus statute[9] provides that the court shall "hear and determine the facts, and dispose of the matter as law and justice require."[10] See United States ex rel. Zaffarano v. Corsi, 2 Cir., 63 F.2d 757, 758.

It is true that the Attorney General has already exercised his discretion (without a hearing) to exclude relator; that, in doing so, he decided that her admission would be prejudicial to the interests of the United States; and that this court and the Supreme Court sustained his decision. But his de-

---

6. See, e. g., Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 560, 22 S.Ct. 431, 46 L.Ed. 679; Dobbins v. Los Angeles, 195 U.S. 223, 240, 25 S.Ct. 18, 49 L.Ed. 169; Raymond v. Chicago Union Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78, 12 Ann.Cas. 757; Southern Ry. Co. v. Greene, 216 U.S. 400, 417, 30 S.Ct. 287, 54 L.Ed. 536, 17 Ann.Cas. 1247; Greene v. Louisville & Interurban R. Co., 244 U.S. 499, 515–518, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas.1917E, 88; Bohler v. Callaway, 267 U.S. 479, 489, 45 S.Ct. 431, 69 L.Ed. 745; Whitfield v. Hanges, 8 Cir., 222 F. 745, 748; cf. Mastrapasqua v. Shaughnessy, 2 Cir., 1950, 180 F.2d 999.

6a. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

6b. Moreover, the "equal protection" clause of the Fourteenth Amendment was there invoked, while here we have action by a federal official. We need not decide whether the "due process" clause of the Fifth Amendment includes "equal protection" in these circumstances—cf. Whitfield v. Hanges, 8 Cir., 222 F. 745, 748—for we do not rest our decision on constitutional grounds.

7. As an indication of a congressional policy against such arbitrary conduct, compare the Administrative Procedure Act, 5 U.S.C.A. § 1009 (e), as to the duty of a court reviewing administrative conduct: "It shall * * * set aside * * * action * * * found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Cf. Wong Yang Sung v. McGrath, 1950, 70 S.Ct. 445.

8. Tod v. Waldman, 266 U.S. 113, 118, 45 S.Ct. 85, 69 L.Ed. 195; Mahler v. Eby, 264 U.S. 32, 46, 44 S.Ct. 283, 68 L.Ed. 549; U. S. ex rel. Mazur v. Commissioner, 2 Cir., 101 F.2d 707, 709; U. S. ex rel. Di Paola v. Reimer, 2 Cir., 102 F.2d 40, 42; U. S. ex rel. Zaffarano v. Corsi, 2 Cir., 63 F.2d 757, 758.

9. 28 U.S.C.A. § 2243, formerly 28 U.S.C.A. § 461.

10. Referring to this language, the Court said in Storti v. Massachusetts, 183 U.S. 138, 143, 22 S.Ct. 72, 74, 46 L.Ed. 120: "All the freedom of equity procedure is thus prescribed; and substantial justice, promptly administered, is ever the rule in habeas corpus."

cision dealt with the issue of her exclusion. We do not hold that she is not to be excluded, i. e., we do not hold that she is to be admitted. We merely hold that, so long as Senator Langer's bill is pending during the present session of Congress, the exclusion order may not be executed. Meanwhile she will be detained in custody at Ellis Island, as closely guarded as the Attorney General deems reasonably necessary to safeguard the country's interests; therefore she cannot become a security risk.[11]

Our decision, however, rests on the present state of the record. On the remand of this case, respondents should be permitted, if they so desire, to file a return denying the relator's allegations as to the administrative practice. If they do so, of course there will be a trial of the resulting issue of fact.[12]

Reversed and remanded.

**L. HAND, Chief Judge (concurring).**

I wish to base my concurrence on what is a somewhat narrower ground than my brother Frank, as I understand him. The case comes to us on a record which, as he says, compels us to assume that the Attorney General has hitherto in all cases postponed deportation while a bill to admit the alien has been pending in Congress. This practice may never in fact have covered the case of an alien whose presence the Attorney General has found to be prejudicial to the interests of the United States; and it can be argued that we should not assume that it has gone so far. However, since it is alleged to have been a general practice, we should accept the allegation as it reads, unless the return denies that it has ever covered cases like the relator's. The absence of any such denial and of any excuse seems to me to present an unrelieved instance of administrative caprice, which we may not ignore.

The absence of any denial would not in my judgment lead to a grant of the writ, if it were supplied by the excuse which I shall mention; and it is in this that I may not be

in accord with Judge Frank. To continue the analogy of the old course of pleadings, the return, instead of denying the applicability of the practice to the relator might have pleaded in confession and avoidance, that the Attorney General has found that the alien's continued presence in the United States would be prejudicial to its interests, even though she were detained at Ellis Island. I should accept that plea as a defense, because I think that no court has power to inquire whether it is supported by the facts; it is enough that on its face it is not beyond the possible reach of the discretion conferred. Such a finding would be altogether different from the finding already made that the alien's admission as a resident would be prejudicial to the interests of the United States. It may be argued that it ought to be implied from the order of deportation itself; but I think that that is not true. The order may have been made because the practice never covered such a case; and, that aside, it appears to me that the exercise of so drastic and absolute a power should not be left to implication, but should be expressly avowed. There is some genuine protection in insisting upon bringing into the clear the basis of such official action, even though a court may inquire no further. Hence, in spite of the absence of any denial of the applicability of the practice, I should have voted to affirm the order, if it had contained an allegation that the Attorney General had found that the detention of the alien, even though in custody, was prejudicial to the interests of the United States. Since, however, it contained neither a denial, nor such an excuse, I agree that the order must be reversed, and the cause remanded with leave to the respondent to replead.

**SWAN, Circuit Judge (dissenting).**

The appellant was excluded from admission to this country and the order of exclusion was affirmed by the Supreme Court. Pursuant to § 154 of Title 8 the immigration officials made arrangements to send her

---

11. Of course, if Congress should enact the bill, she will be released.

12. Judge Hand and I disagree to this extent: He would require no proof if

the return states that the Attorney General has found that relator's presence, even at Ellis Island, would be prejudicial to the interests of the United States.

back to the country whence she came. On the day preceding the date fixed for her departure, a petition for habeas corpus was filed on her behalf in the district court to stay her deportation. The district judge forthwith denied the petition. He stated that he refused to grant the writ because he knew of no law giving him authority to issue it.

My brothers are agreed that the order must be reversed, a writ must issue, and the respondents must be given an opportunity to file a return thereto. If no return is filed, I take it that the respondents will be ordered to defer deportation of the appellant so long as a remedial bill to admit her remains pending in Congress. If a return is filed, my brothers appear to be not in complete agreement as to what course the subsequent proceedings will take.

Judge Hand believes that if the return states that "the Attorney General has found that the alien's continued presence in the United States would be prejudicial to its interests, even though she were detained at Ellis Island," the writ will be discharged without any hearing because no court has power to determine whether the excuse stated is supported by the facts. As a technical objection to this view it may be noted that to speak of this alien's "continued presence in the United States" runs counter to the legal theory that an alien stopped at the border is still in theory of law outside the country, even though physically allowed to enter, as this court has recently held with respect to this very alien. Knauff v. Shaughnessy, 2 Cir., 179 F.2d 628. A substantial objection is the futility of the proposed procedure. To issue the writ, merely to permit the Attorney General to say that he exercised his discretion in the public interest seems to me a barren formality. Concededly the alien is excludable and must be sent back to the country whence she came. The discretion which § 154 confers upon the Attorney General is to send her back "immediately," or to defer her departure, if in his opinion "immediate deportation is not practicable or proper." The Attorney General must be presumed to perform his duty and to exercise in the public interest the discretion conferred upon him. If the court

cannot consider whether the facts upon which the Attorney General acts justify his action, I can see no useful purpose in requiring him to plead. The ordinary plea in confession and avoidance raises issues of fact which, if denied, must be tried out, but in the case at bar, if I correctly understand Judge Hand's view, a plea such as he suggests will end the case and the writ will be discharged.

Judge Frank suggests that upon remand the respondents may "file a return denying the relator's allegations as to the administrative practice" and, if they do, "there will be a trial of the resulting issue of fact." This I take to mean that the only ground on which the writ may be discharged will be the relator's failure to prove the existence of an "invariable practice" to suspend deportation proceedings when a private bill for the deportee's relief has been introduced in Congress. This court's decision in United States ex rel. Pirinsky is relied upon. I do not think it supports my brother's decision in the case at bar. In the first place, that case dealt with the provision in § 156 that pending the final disposition of his case, an alien may be released under bond. That provision was plainly intended for the benefit of the alien. The discretion conferred by § 154, with which we are now dealing, is to be exercised not for the benefit of the alien but with a view to what is "practicable or proper" in the public interest of efficient administration of the provisions relating to sending back excluded aliens. Secondly, and more important, although we held in the Pirinsky case that it was an abuse of discretion to set bail at a "uniquely high" sum when the particular circumstances of the relator's case did not justify singling him out for such treatment, we did not hold that a deviation from invariable administrative practice was itself an abuse of discretion regardless of circumstances. Yet that is the doctrine which my brothers have here adopted. They do not contemplate, if I understand them, an inquiry into the particular circumstances of the appellant's case which might differentiate it from other prior cases and justify a departure from the alleged invariable administrative practice. I do not understand

how it can be within the competence of a court to declare the exercise of administrative discretion unreasonable if the court may not inquire into the reasons upon which the administrative official acted.

I think the order should be affirmed.