BOHLER, TAX COLLECTOR OF RICHMOND COUNTY, GEORGIA, ET AL. v. CALLAWAY, EXECUTOR OF THE ESTATE OF J. B. WHITE, DECEASED.

CALLAWAY, EXECUTOR OF THE ESTATE OF J. B. WHITE, DECEASED, v. BOHLER, TAX COLLECTOR OF RICHMOND COUNTY, GEORGIA, ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

Nos. 170, 171. Argued January 14, 1925.—Decided April 13, 1925.

1. Refusals to grant interlocutory injunctions to stay proceedings before a board of arbitration, *held* not *res judicata* in favor of the validity of those proceedings. P. 485.
2. The provision in Georgia for reviewing tax assessments by arbitration; Code 1910, § 1059; Acts 1910, pp. 22, 24, Parks Ann. Code, 1914, § 1116 (d); was superseded by Acts of 1918, No. 270, p. 232, which substitutes a petition in equity to enjoin excessive assessments. P. 485.
3. Where the only remedy afforded by the state law to a tax payer against an invalid tax is by a proceeding in equity in the state court, purely judicial in character, to enjoin excessive assessment, the federal court has jurisdiction of a bill to enjoin collection in which it is set up that the tax violates the federal Constitution. P. 486.
4. If the administration of the tax laws of a State is shown to result in a systematic and intentional discrimination against the plaintiff, the federal court may grant injunctive relief allowed by the state law without deciding the federal constitutional question upon which jurisdiction of the bill is based. P. 489.
5. Evidence *held* sufficient to show such systematic underassessment of property in Georgia, particularly of stocks and bonds, as justified a decree holding invalid an assessment of plaintiff's securities at full market value, and reducing it to 25%. P. 489.

6. In cases of this kind it is proper to call as witnesses tax officials of the State and county, because of their experience in assessing property, to testify to the existence of systematic and intentional undervaluation. *C. B. & Q. Ry.* v. *Babcock*, 204 U. S. 585, distinguished. P. 491.

7. To avoid addition of interest, a tender of money in discharge of a disputed tax should not be tied to the condition that it be received in full payment. P. 492.

291 Fed. 243 affirmed.

These are an appeal and a cross appeal direct from the District Court for the Southern District of Georgia, under § 238 of the Judicial Code, because involving the application of the Federal Constitution.

The bill sought to enjoin the levy of executions on delinquent tax assessments of the tax receiver of Richmond County, Georgia, against the estate of J. B. White, for the seven years, from 1911 to 1917. The assessments were as follows:

|  |  |  | *Tax* |
|---|---|---|---|
| Assessment, | 1911 | $1,000,866.87 | $13,552.20 |
| " | 1912 | 1,399,161.67 | 18,888.68 |
| " | 1913 | 1,558,300.83 | 22,751.19 |
| " | 1914 | 1,548,735.38 | 21,527.42 |
| " | 1915 | 1,439,160.83 | 21,011.75 |
| " | 1916 | 1,509,936.00 | 22,347.05 |
| " | 1917 | 1,623,567.52 | 25,490.01 |

The aggregate amount of the executions was $145,-568.30, with interest thereon to the date when issued, July 28, 1918, of $70,764.01, or a total of principal and interest of $216,332.01.

The bill of the complainant, who was White's executor, asked an injunction on two grounds. One was that in the sum assessed were national bank stocks, which under § 5219 R. S. should have been assessed for taxation in New York City where the banks were and not in Georgia,

and also stock in a Georgia railway exempt from taxation by the state law.

The second ground was that the assessment of the stocks and other securities was at their full market value, whereas in Georgia and in Richmond County property of this class in the hands of others was generally and intentionally assessed by the taxing officers at less than 25 per cent. of such value, and that such discrimination was unlawful under the statutes and constitution of Georgia and would work a denial of the equal protection of the laws in violation of the Fourteenth Amendment of the Federal Constitution.

J. B. White, a native of Ireland, came to Georgia in 1866, and resided there continuously until 1909. He never was naturalized. In 1909 he went abroad and died at Genoa, Italy, in March, 1917, leaving a will, in which he described himself as of Richmond County in that State, and named the complainant, E. H. Callaway, as his executor. The executor probated the will and filed an inventory of the estate in the Court of the Ordinary. During the seven years—1911 to 1917—White had returned for taxation his real estate in Richmond County, amounting to $600,000, and $300 of household and kitchen furniture, but no other personal property. After the probate of the will, the tax receiver of the county demanded of the executor returns for taxation for seven years on the securities shown in the inventory. The certificates of stock and the bonds were physically in possession of Henry Clews & Company in New York. The executor insisted (though he subsequently abandoned the claim) that they were not subject to taxation in Georgia, for the reason that White was a nonresident. The tax receiver withdrew his demand. Thereafter, the Board of County Commissioners directed institution of proceedings in mandamus to compel the tax receiver to assess this property as delinquent. The suit for mandamus,

42684°—25——31

though it did not go to a rule absolute, brought out from a member of the firm of Clews & Company evidence of the exact amount and value of the property which White had left with them. The tax receiver then made the assessments at full market value. The executor demanded arbitration as provided by § 1059 of the Georgia Code of 1910 and the General Arbitration Act—Acts of Georgia of 1910, pp. 22, 24, as codified in Park's Annotated Code, (1914), § 1116 (d). The latter section directed the County Tax Receiver to assess property at the valuation fixed by the taxpayer in the return, if satisfactory, and if not, within thirty days to make an assessment on the best information he could procure, and notify the taxpayer. The latter might by a demand within twenty days have the question of true value referred to arbitrators, one selected by him, one by the tax receiver, and a third by the other two and, in default of their agreement, by the Board of County Commissioners. In this case the executor selected his arbitrator, the tax receiver his, and the county commissioners selected the third. On the day of the meeting of the arbitrators, the State applied to the Superior Court of the County for an injunction to prevent their further proceeding; but the application was denied. The issue was then heard by the arbitrators, the State and county appearing and taking part therein by counsel. The arbitrators made an award fixing the valuation at 25 per cent. of the market value of the securities, and the same was " fastened in tax digest of the County for the year 1917." The tax collector calculated the taxes due and submitted the amount to the executor as $27,-980.88. This sum the executor tendered as full payment of the taxes due. On advice of counsel representing the State, the collector declined it. The State and county then filed a second petition in the Superior Court to enjoin the tax receiver and the tax collector from making the assessments and collections according to the arbitra-

tion. The Superior Court held the petition insufficient on demurrer and dismissed the application. Meantime the first application to enjoin the proceedings in arbitration reached the Supreme Court, and the Superior Court was sustained in refusing the injunction. *Georgia* v. *Callaway*, 150 Ga. 235. When the second application ·for injunction reached the Supreme Court, two of the judges out of six (only four being present) held that an Act of 1918 (Acts of Georgia of 1918, No. 270, p. 232) repealed the section of the Act of 1910 on which the arbitration had proceeded and rendered it void, and that therefore the original assessments made by the tax receiver were valid, the executions could issue and no injunction was necessary. Of the other two judges, one held that the Act of 1918 did not prevent the arbitration proceedings in which the State participated. , The other held that the State had not put itself in a position to object to the assessment of the arbitrators, because its only complaint was that the award was fraudulent and it had not made out its case; and that the effect of the Act of 1918 it was not necessary for the court to decide. So an injunction was a second time refused. *Georgia* v. *Callaway*, 152 Ga. 871.

The second decision was made March 4, 1922. On March 9th following, tax executions on the assessments made by the tax receiver July 28, 1919, including those on the stock of the national banks of New York City, were issued. The executor · thereupon · again tendered payment of taxes and interest under the award of the arbitrators to the tax collector, which was again declined.

On March 22, 1922, the bill in the present case was filed, and after a hearing before three judges, a temporary injunction was issued by the District Court. ' The State and the county and the tax officials were made defendants, and filed answers. Among other objections by them to the equitable relief sought was that, though the

complainant in his bill admitted that there was due from him $27,980.88 to the tax receiver, it had not been paid, and the bill should be dismissed. Thereafter, on the 25th of September, 1922, the executor tendered the sum of $27,980.88, and it was accepted, without prejudice to the rights of any of the parties in the pending litigation. The executor then upon leave of court amended his bill and made the averment of the payment.

The District Court after a full hearing sustained its jurisdiction, held that the award of the arbitrators was invalid and that the State and county were not estopped by the state court orders to attack it, enjoined execution of the assessments on the national bank and Georgia railway stocks as non-taxable, found unlawful discrimination in the assessments on the other securities, enjoined collection thereof to the extent of 75 per cent., and decreed against the complainant interest on the 25 per cent. of the assessments already paid by him, from the date of his first tender until their actual payment. The cross appeal of the executor raised in his assignments of error the validity of the award of the arbitration and the question of interest.

Mr. E. H. Callaway, with whom Mr. Wm. M. Howard was on the brief, for appellant in No. 171, and for appellee in No. 170.

Mr. Benjamin E. Pierce, with whom Mr. George M. Napier, Attorney General of Georgia, Mr. Wallace B. Pierce and Mr. Wm. K. Miller were on the brief, for appellees in No. 171, and for appellants in No. 170.

MR. CHIEF JUSTICE TAFT, after stating the case as above, delivered the opinion of the Court.

First. A primary and preliminary question is that of the validity of the arbitration and award. The proceeding was initiated and award made under the Act of 1910,

but it was not begun until July 28, 1919, a year after the Act of 1918 claimed by appellants to have repealed the arbitration provision, was enacted.

The executor contends that the refusal of the state Supreme Court to enjoin the arbitration board from proceeding, was *res judicata* as to its validity. There were no defensive pleadings. It was a decision upon an interlocutory injunction and was presumably made in the exercise of judicial discretion upon a balance of convenience as to halting the proceeding of arbitration before its conclusion. *Chicago Great Western Ry.* v. *Kendall*, 266 U. S. 94, 100. The court pointed out that the ruling it affirmed was only a *pendente lite* injunction. 150 Ga. 235. Neither the court nor counsel referred to or considered the Act of 1918. Its effect upon the arbitration proceeding does not seem to have been called to the attention of either. To give finality to such a temporary ruling would be contrary to the principles governing estoppel by judgment. *Santowsky* v. *McKay*, 249 Fed. 51; *Knox* v. *Alwood*, 228 Fed. 753; *Webb* v. *Buckalew*, 82 N. Y. 555. When the case came again to the Supreme Court, on the second application for injunction by the tax authorities, it was dismissed for varying reasons of the four judges. Certainly, in view of the holding by two of them that the Act of 1918 repealed the provision for arbitration, it could not be said to be a judgment binding the parties to the validity of the award. We agree with the District Judge that no estoppel grew out of the injunction suits.

Second. Did the Act of 1918 render the award a nullity? Two of the state Supreme Court judges held that it did. Four federal judges have agreed with them. The sections of the act of 1918 here applicable were the first, third, fifth, seventh, and eighth. By the first section, when the owner of property had omitted to return the same for taxation at the time and for the

years the return should have been made, he, or, if he was dead, his personal representative, was required to return the property for taxation for each year it was delinquent.  By the third section, when such property was of the class which should have been returned to the tax receiver of the county, the latter was to notify in writing the delinquent, or, if dead, his personal representative, requiring a return within twenty days.  By the fifth section, if the delinquent or his personal representative refused to return the property after notice, the tax receiver was to assess the property from the best information he could obtain as to its value, for the years in default, and to notify such delinquent of the valuation, which should be final unless the person or persons so notified raised the question that it was excessive, in which event the further procedure should be by petition in equity in the Superior Court of the county where such property was assessed.  By the seventh section, if the delinquent or his personal representative disputed the taxability of such property, he might also raise that question by petition in equity.  By the eighth section, all laws and parts of laws in conflict with the act were repealed.

As already stated, by the laws in force before 1918, the remedy for the delinquent taxpayer was, in case of excessive assessment, to demand arbitration in 20 days. Obviously, the Act of 1918 gave to the taxpayer an opportunity to file a petition in equity to enjoin excessive assessment as a substitute for his previous remedy by arbitration.  The repealing section, though not specific, was quite broad enough to end a resort to arbitration under the old law.

Third.  Had the federal court jurisdiction to entertain the bill and enjoin the enforcement of the executions issued upon the assessments?  Appellants cite *Keokuk & Hamilton Bridge Co.* v. *Salm*, 258 U. S. 122, as indi-

cating the contrary. That was a bill in equity by a bridge company to enjoin a tax assessment by county assessors on a railroad bridge, because of discrimination. The assessment made by the county assessors was subject to revision by a board of review, required to give a hearing and to correct the assessment as should appear just. The payment of taxes was not to be enforced by distraint or levy, but by legal proceedings in a civil suit for the collection of a debt in which the owner might appear and defend on any legal ground, including discrimination. The complainant there brought his bill without taking any of the steps offered by the statute as an administrative remedy, and ignored the defense he might make in the suit to collect the tax. The question here is different. The remedy to be taken by the taxpayer against excessive assessment is by petition in equity. That is a judicial proceeding. Such a proceeding is not administrative, as the appeal to the Supreme Court was in the case of *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210. Nothing in the Georgia decisions shows that the petition here provided was other than a regular application to a court of equity for relief by injunction. Nothing indicates that the court was to make administrative assessment. It was only to enjoin excessive assessment. No reason existed why a federal court sitting in the same jurisdiction might not grant equitable relief to the taxpayer against the executions on the assessments, provided there were stated in the bill ground for federal equity jurisdiction. This was a suit of a civil nature under § 247 of the Judicial Code, and arose under the Constitution of the United States. It was properly in equity because there was no adequate remedy at law, the assessments being final except as subject to equitable intervention. The Georgia law gives no right of action to recover taxes voluntarily paid, even under protest on the ground that they were illegally assessed and collected.

Section 4317 of the Civil Code of Georgia (1910) is as follows.

" Payments of taxes or other claims, made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party, are deemed voluntary and can not be recovered back, unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule."

In Georgia the statutory methods for levy, assessment and collection of taxes are not merely cumulative—they are exhaustive. *Richmond County* v. *Steed,* 150 Ga. 229; *State* v. *Western & Atlantic R. R.,* 136 Ga. 619. It would seem to follow that the only remedy intended to be furnished in Georgia in such a case as this was by injunction in equity against excessive assessments. If the remedy by law is doubtful, equitable relief may be had. *Wilson* v. *Ill. So. Ry.,* 263 U. S. 574, 577; *Union Pacific R. R.* v. *Weld County,* 247 U. S. 282, 285, 286; *Davis* v. *Wakelee,* 156 U. S. 680, 688. The case seems to be quite like that of *Cummings* v. *National Bank,* 101 U. S. 153, in which, under a statute of Ohio authorizing a suit for injunction to prevent the collection of illegal taxes, it was held that a bill would lie in the federal court to enjoin the collection of a tax as illegal because it discriminated against the shares of a national bank.

Another objection to the bill is that the assessments made in July, 1919, have become final by the delay, because this bill was not filed until March 11, 1922. It is argued that, as the petition in equity takes the place of the arbitration proceeding and the arbitration proceeding had to be begun within twenty days after the notification to the taxpayer of the assessment, in some way or other the 20-day limitation is projected into the new act.

No statutory time limitation which would bar the resort to a petition or a bill in equity as filed in this case has been pointed out to us by counsel, and we can not infer one.

We come now to the issue of discrimination. By the constitution of Georgia, Article 7, § 2, it is provided that " All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." By the laws of Georgia all real and personal property, including stocks and securities in corporations in other States owned by citizens of Georgia, is to be returned and taxed at its fair market value, i. e., what it would bring at cash sale when sold in such manner as it is usually sold. Park's Annotated Code of Georgia (1914), §§ 1002, 1002 a, 1003 and 1004.

It is well settled that if the administration of the tax laws of a State is shown to result in an intentional and systematic discrimination against a complainant by a bill in a federal court, the court may grant relief by injunction under the state law without deciding the federal constitutional question upon which jurisdiction of the bill is based. Louis. & Nash. R. R. v. Greene, 244 U. S. 522, 527; Greene v. Louisville R. R., 244 U. S. 499, 508, 514–519; Taylor v. L. & N. R. R., 88 Fed. 350; Georgia Railroad v. Wright, 125 Ga. 589, 602, 603.

Complainant's evidence to show that the valuation of real and personal property by the county officials was far below the market value in Richmond County and throughout the State of Georgia, is convincing. It consists of reports and admissions by the Comptroller General and the State Tax Commissioner, the chief taxing officers of the State, and of the testimony of past and present taxing officials of a great number of counties,

some having large cities, and others without such cities, in different parts of the State. In his report of 1920, the State Tax Commissioner said he thought it wise not' to require more than 35 per cent. of the true value of real estate as a minimum basis for equalizing purposes, and he finally approved a comparative statement of counties showing the highest per cent. of true value of lands returned to be 60 and the lowest 25. The evidence further showed that the assessment of intangible personalty was at a much less percentage of true value than that of real estate. The fact, seemed to be that stocks and bonds were not generally returned at all, and when they were returned they were assessed at a mere nominal figure. The condition in respect to the low valuations was attributed by several of the taxing officials, who were witnesses for the complainant, in part to the arbitration method. They said that if they attempted to impose anything like the real value, an arbitration was demanded, and the invariable result was a reduction of the assessment, so that there had come to be a generally understood acquiescence by county officials in low percentages. It was quite apparent that the undervaluation of both realty and personalty by county taxing officials in Richmond County and elsewhere in Georgia had become systematic and intentional. It would seem from the evidence and the reports that not more than 10 per cent. of stocks and bonds was taxed at all. The Comptroller General's report for 1912 said that the system of assessment of such property was but little better than voluntary contributions of taxpayers to State's revenue. The recognition of these conditions seems to have led equalizers and assessors in fairness to scale down the assessment of stocks and bonds when returned. Hence, we find that the Board of Tax Assessors of Richmond County, a body whose duty it was to receive the regular annual returns from the tax receiver and equalize them as between individuals, Park's

Annotated Code (1914) § 1116 (k), in determining the value of the White estate for taxing purposes for 1918—a current assessment the next year after those here in suit—fixed the value of the same stocks and bonds and intangibles at $250,000, or about 18 per cent. of their market value. Two of the assessors by affidavit testified from their experience that such percentage was at a higher rate than that at which such property when returned was usually assessed. The tax receiver who returned the property in this case at its full market value for the seven years, testified before the Board of Arbitration that neither he nor the Board of Appraisers had ever taxed real estate at more than two-thirds of its value, mortgages or stocks at more than 50 per cent., and county property at more than 33⅓ per cent.

Objection is made to the testimony of tax officials in this case, especially to that of the tax receiver who fixed the 100 per cent. assessment in the present case, and to that of the members of the Board of Tax Assessors and Equalizers who assessed the value of the White estate for the year 1918. It is based upon the language of this Court in *C. B. & Q. Ry.* v. *Babcock,* 204 U. S. 585, 593. We do not think that the citation has application here. That was a case where members of a state railway assessing board were called by the taxpayers and subjected to an elaborate cross-examination with reference to the operation of their minds in valuing and taxing the particular railroads whose assessment was there in question. It was held to be improper thus to impeach official awards. The witnesses in this case were not subjected to cross-examination as to the reasons for their official action in this case. They were called because they were men of long experience in assessing property in the county and State to testify to the existence of a systematic and intentional undervaluation of the property of others—of property generally.

The court, in reaching a conclusion as to the percentage to which the valuation here should be reduced in order fairly to avoid discrimination, fixed 25 per cent., the same as that in the award of the Board of Arbitration. It is insisted that the action of the board, because its power to make an award was abolished by the law of 1918, was not admissible evidence. It is quite true that the award might be of doubtful competency if offered as independent evidence, but the fact that the award was made an issue in the pleadings and evidence and was a part of the record, suggests a difference. But even if it ought not to have been considered, the other evidence sustaining the conclusion of the court was ample. The evidence which the defendants offered was of a stereotyped character from the state and county officials of many counties, in which it was said that they all struggled to obey the law; but nothing which was said by them was any real contradiction of the affidavits already referred to, or of the reports of the state officials already commented on.

There only remains to consider the question of interest made by the executor on his cross appeal. The District Court exacted interest on the amount found to be due and which the executor admitted to be due, from the time of the first tender by him at the time of the award of the arbitrators until the final tender some three years later when the amendment to the bill was filed. We think this was right. The tenders of the complainant were with a condition attached, namely that the money to be received was to be received in full payment of the claim. The complainant had no right to impose such limitation. If he owed the money, as he admitted he did, he should have paid it without restriction, and his withholding it for three years requires that he pay interest on it during the time of detention.

*Decree affirmed.*