## CITY OF DALLAS v. HIGGINBOTHAM-BAILEY-LOGAN CO.

Circuit Court of Appeals, Fifth Circuit. January 17, 1930.

Rehearing Denied February 10, 1930.

No. 5589.

Jas. J. Collins, City Atty., and H. P. Kucera, Asst. City Atty., both of Dallas, Tex. (A. A. Long and W. Hughes Knight, both of Dallas, Tex., on the brief), for appellant.

Cloyd H. Read and Rhodes S. Baker, both of Dallas, Tex. (Read, Lowrance & Bates and Thompson, Knight, Baker & Harris, all of Dallas, Tex., on the brief), for appellee.

Before WALKER and FOSTER, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. The plaintiff below brought this suit to enjoin the city of Dallas, Tex., from enforcing against it an alleged tax liability and lien for personal taxes claimed by said city. It alleged that it had already paid the taxes due by it upon its property, of the value of $543,200, at the rate of $2.45 per hundred, or a total of $13,308.40, but that the assessor and collector of taxes for said city had attempted to add to its return, without notice or hearing, $900,000 of taxable value, and was demanding of plaintiff the additional sum of $22,050, for which a lien was claimed upon all of its property.

The record shows that, after plaintiff had made its return, the assessor and tax collector, finding that it was the owner of more than $2,000,000 of Liberty Bonds and treasury notes, figured their par value at $2,000,000 and for taxing purposes added to plaintiff's return, as cash, the sum of $900,000, upon which it was preparing to collect taxes through the statutory procedure, when this suit was filed.

The theory of the city was that the plaintiff had attempted to evade payment of its taxes by investing its cash in these securities shortly before the 1st of January, when the liability would accrue, and after that period the bonds were sold and the proceeds again returned to its business. The city, therefore, determined to make the assessment on the basis of cash in hand, to prevent what it thus considered a fraud upon its revenue.

The securities held by plaintiff and as to which the tax was sought to be imposed were acquired as follows:

| | |
|---|---|
| Prior to October 6, 1927 | $ 600 00 |
| October 6, 1927 | 200,000 00 |
| October 10, 1927 | 100,000 00 |
| October 20, 1927 | 600,000 00 |
| October 28, 1927 | 250,000 00 |
| October 31, 1927 | 250,000 00 |
| October 28, 1927 | 250,000 00 |

It had also acquired $300,000 of treasury notes on December 29, 1927, but admitted it was liable to be taxed to this extent, and tendered to the city before this suit was filed the sum of $3,307.40 in full settlement thereof. As to the remainder, it claimed that the investment was made in good faith, without any purpose to defraud, and that the securities were exempt from taxaton.

The city excepted to the bill on the ground that there was no federal question involved, and, the parties being citizens of the same state, the lower court was without jurisdiction, and, further, that the plaintiff had an adequate remedy at law by paying the taxes under protest and suing to recover them back, and hence there was no equity in the bill.

■ As to the first of these propositions, it is sufficient to say that, if the plaintiff had acquired the securities in such manner as to be free from taxation, and what was being done by the city amounted to an attempt to tax them by this indirect method, the same amounted to a clear violation of the law (31 USCA § 746), which declares that they "shall be exempt, both as to principal and interest, from all taxation," except estate and inheritance taxes, and the lower court, therefore, had jurisdiction to construe and apply this federal statute, under section 24(1) of the

Judicial Code [28 USCA § 41(1)]. See Iowa Loan & Trust Co. v. Fairweather (D. C.) 252 F. 605, and authorities therein cited; McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Hibernia Sav. & Loan Soc. v. City of San Francisco, 200 U. S. 310, 26 S. Ct. 265, 50 L. Ed. 495; Home Savings Bank v. Des Moines, 205 U. S. 503, 27 S. Ct. 571, 51 L. Ed. 901.

■■ It is also well settled that, where the attempt is to illegally tax such exempt property indirectly by assessing the owner with its value in money, a court of equity will interfere to prevent that course, and the rule is recognized by the Supreme Court of Texas. City of Waco v. Amicable Life Insurance Co. (Tex. Com. App.) 248 S. W. 332; Court v. O'Connor, 65 Tex. 335; Davis v. Burnett, 77 Tex. 3, 13 S. W. 613; Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71; Sullivan v. Bitter, 51 Tex. Civ. App. 604, 113 S. W. 193; Langlay v. Smith, 59 Tex. Civ. App. 584, 126 S. W. 660. Of course a federal court sitting in equity is not bound by decisions of state courts, but these authorities are cited to show that, even in the state of Texas, it is settled that a writ of injunction will lie to prevent the collection of taxes upon property exempt, especially under the laws of the United States, and to further show that there is no question of public policy of the state against such a proceeding. See Cummings v. Merchants' Bank, 101 U. S. 153, 25 L. Ed. 903; also Rose's Notes (Red. Ed.) vol. 10; Bohler v. Callaway, 267 U. S. 479, 45 S. Ct. 431, 69 L. Ed. 745; Grether v. Wright (C. C. A.) 75 F. 742.

The court below gave judgment for the plaintiff, enjoining the collecton of the taxes and sustaining the tender of the amount admitted to be due by plaintiff, rejected the cross claim of the city for the taxes sought to be imposed, and assessed the costs against the defendant. From this judgment the city has appealed.

■ The record shows that the plaintiff operated a mercantile business of considerable magnitude, which in the spring and summer required the expenditure of large sums of money to pay for goods sold to its customers on terms of credit. In the fall of the year its collections would come in, and these funds were used to buy the government securities in question. Its borrowings were usually in July, August, and September, to pay for goods for the fall trade, and upon terms of six months, which went beyond the first of the year, and the investment in the securities was made for the purpose of offsetting the in-

terest which it had to pay on its own notes. By borrowing money, it was able to take discounts on its bills, ranging from 2 per cent. to 6 per cent., by paying cash. If plaintiff's purchases of the bonds and the treasury certificates were bona fide, in the sense that it actually became the owner thereof by paying the price in cash, and what it did was not a mere bookkeeping entry for the purpose of covering up its funds (and there seems to be no question but that the transactions were genuine), but the principal purpose was to avail itself of the interest which it would receive as an offset to that which it would pay upon the borrowed money, as claimed in this case, we do not think it can be said that the sole purpose was to defraud the city of its revenue, and the securities would be none the less exempt from taxation, although the taxpayer might have intended thereby to also escape assessment for taxation under the peculiar taxing system of the state. Griffin v. Heard, 78 Tex. 615, 14 S. W. 892; Ogden v. Walker, 59 Ind. 460. In the present case, $600,000 of the treasury notes, which bore 3½ per cent. interest, were purchased on October 22, 1927, in New York City, with funds which the plaintiff had on deposit with a bank in that city. Between the dates of October 6th and 20th, it also purchased from a bank in Dallas, Texas, $400,000 of bonds, which bore 4½ per cent. interest; on October 28th, $250,000 of bonds from the same bank, bearing 4½ per cent. interest; October 31st, $250,000 additional from this bank, which bore the same rate of interest; and on December 10th, it also purchased from the Dallas bank $250,000 of additional bonds bearing 4½ per cent. interest. On December 29th, it made its final purchase of $300,000 of treasury notes, as to which it conceded liability and tendered the amount of taxes before bringing this suit. On January 5, 1928, it sold the bonds which had been bought in New York to a bank in the city of Dallas, and on January 9th it also sold the $1,150,000 of bonds, which it had acquired from a national bank in Dallas, to the Federal Reserve Bank of that city.

■ On the question of good faith the president of plaintiff company testified in part as follows:

"Our company follows the policy of borrowing money in large amounts in the summer and early fall for two or three reasons. We do not do it to avoid taxes, but we buy bonds that are not taxable, and we get that advantage, because we get the use of our money. If we are in debt along in November and December, and when the money is coming in in October, if we do not do something of that kind, we would have a lot of money on hand we could not use, and we buy these bonds.

"We borrow money in the summer time to pay our debts with, and when we get our cash in later, or during the same period, we find it advantageous to put the money into government bonds. We have three reasons for buying government bonds or certificates. One is, that they are tax-exempt; the other is that we can cash them quickly; and the other is that they have a satisfactory return. * * * We try to get enough bonds, so as to take up our slack on what money we will have on hand. We don't know how much money we will get in in the fall. It is a hard matter to tell how collections are going to come in, and we try to keep it liquid and do the best we can." "Then we buy lots of goods in January and February, and we sell these bonds, and sometimes we do not. There is not much speculation in it. It is the next thing to cash. We can invest our money in it, and get it when we need it. That is about the size of the whole business."

Of course, it is contended that, because the bonds were sold shortly after January 1st, the purpose was to escape taxation; but in view of the facts disclosed by the record, to wit, that the plaintiff would have had these large sums of money idle for a considerable period of time while paying interest upon its obligations, that the investment produced a substantial return, and the only evidence, beyond the conclusion to be drawn from the sale after the passing of the assessing period, was to the effect that it was done in good faith and for sound business reasons, we do not think a court would be justified in concluding that the sole purpose was to defraud the city of its revenue.

The cases relied on by defendant, such as Mitchell v. Leavenworth, 91 U. S. 206, 23 L. Ed. 302, showed that the one and only purpose was to defraud the fisc. In that case the taxpayer conceived that the tax would be due upon funds owned by him as of March 1st, and on February 28th preceding he went to the bank where they were "subject to check, converted them into notes of the United States, and deposited them [the government notes] to his general credit March 3d" following. The state court having held the funds subject to taxation because of the clear and single purpose to defraud, the Supreme Court of the United States, in affirming that view (quoting from the syllabus), said: "Held, that the decree was correct, and that, although such notes were exempt from taxa-

516

tion by or under state or municipal authority, a court of equity would not use its extraordinary powers to promote such a scheme devised for the purpose of enabling a party to escape his proportionate share of the burdens of taxation." The other cases cited, which we do not think it necessary to analyze, were also based upon fraud.

For the reasons assigned, our view is that the judgment of the lower court is correct, and it is accordingly affirmed.