**AMERICAN MUT. LIABILITY INS. CO. v. McDONOUGH, County Treasurer.**

No. 10524.

District Court, N. D. Illinois, E. D.

Oct. 7, 1931.

Roy D. Keehn, Morris Schaeffer, and W. M. Keeley, all of Chicago, Ill., for plaintiff.

John A. Swanson, State's Atty., and Hayden N. Bell, Co. Atty., both of Chicago, Ill., for defendant.

WOODWARD, District Judge.

This is a suit by the owner of a leasehold estate in real estate in Cook county, Ill., to restrain and enjoin the county treasurer and ex officio county collector from collecting the taxes extended against such real estate for the years 1928 and 1929. The court previously has denied a motion to dismiss the bill, and has issued a temporary injunction restraining the county collector from making application to the county court for judgment for taxes which are delinquent. Answers were filed. On the 28th day of September, 1931, the court, of its own motion, suggested the want of jurisdiction in the federal court to grant the prayer of the bill, and ordered counsel on both sides to argue the jurisdictional question, which was done accordingly. Both sides have filed written briefs.

The court is now passing upon the question of jurisdiction.

The Constitution of Illinois provides that all property, real and personal, shall be taxed "so that every person and corporation shall pay a tax in proportion to the value of his, her or its property." Article 9, § 1.

Revenue laws have been enacted to carry into effect the provisions of the Constitution.

In counties of 250,000 or more inhabitants, of which Cook county is one, a board of assessors, consisting of five persons charged with the duty of assessing both real and personal property, is elected. Paragraph 314, c. 120, Cahill's Rev. Stat. of Ill. Both real and personal property are required to be assessed at the fair cash value. Paragraph 329, c. 120, Cahill's Rev. Stat. of Ill.

Quadrennially there is a general assessment of real property; only changes, additions, and improvements being assessed between the quadrennial years. Paragraph 323, c. 120, Cahill's Rev. Stat. of Ill.

The assessment books compiled by the board of assessors are returned to the board of review, consisting of three members. The board of review has extensive powers, among which may be noted:

(1) To assess all property subject to assessment which shall not have been assessed by the assessor and to assess omitted property; (2) on the taxpayer's complaint in writing that his property is incorrectly assessed, to hear the complaint and review and correct the assessment; (3) of its own mo-

tion to increase, reduce, or otherwise adjust the assessment of any individual, on real property or personalty, and make changes in the valuation as may be just; and (4) to have full power over assessments to make a just assessment. Paragraph 346, c. 120, Cahill's Rev. Stat. of Ill.

The statutes also provide for a state tax commission. Among its other powers, it may order a reassessment by the board of assessors for any year of all or any class of the taxable property of a county. In case a reassessment is ordered, it is required to fix the time and place of the meeting of the board of review for the purpose of revising, correcting, and equalizing such reassessment. The reassessment, when made and completed, is substituted for the original assessment, and is the assessment against which taxes for that year are levied and extended. Paragraphs 117–121, c. 120, Cahill's Rev. Stat. of Ill.

The assessment books, as finally compiled by the board of review and certified by it, are the valuations against which taxes are extended. After the taxes are extended by the county clerk, the books are certified to the collector under a warrant directing him to collect the amounts shown therein.

If the tax extended against real property is not paid, it is returned to the county treasurer, as ex officio county collector, as delinquent. To enforce the collection of delinquent taxes extended against real estate, the county collector is required to apply to the county court for judgment against such delinquent lands and lots, of which notice must be given. Paragraphs 201–208, ch. 120, Cahill's Rev. Stat. of Ill. The owner of real estate may, in such suit, appear in the county court and object to the entry of judgment, in which case "the court shall hear and determine the matter in a summary manner, without pleadings, and shall pronounce judgment as the right of the case may be. The court shall give judgment for such taxes * * * as shall appear to be due, and such judgment shall be considered as a several judgment against each tract or lot * * * and the court shall direct the clerk to make out and enter an order for the sale of such real property against which judgment is given." Paragraph 209, c. 120.

From the judgment of the county court, an appeal may be taken to the Supreme Court. If it is desired that the appeal shall operate as a supersedeas, the taxpayer must deposit with the County Collector the amount of the judgment and costs. If the judgment is affirmed, the amount deposited is applied towards the payment of the judgment. If the judgment is reversed, the deposit is returned to the taxpayer. Paragraph 210, c. 120, Cahill's Rev. Stat. of Ill.

Plaintiff on his own behalf, and on behalf of all other real property owners in Cook county similarly situated, prays that the county collector be enjoined and restrained from applying to the county court of Cook county for a judgment of sale against his real estate or offering the same for sale, and also that the court declare that the reassessment of real property made in 1928, against which taxes for the years 1928 and 1929 were extended, be declared of no validity.

The basis for federal jurisdiction is the claim that, unless injunctive relief is granted as prayed, plaintiff will be deprived of its property without due process of law and denied the equal protection of the laws, in contravention of the Fourteenth Amendment to the Constitution of the United States.

The bill avers that the plaintiff, a Massachusetts corporation, was on April 1, 1928, the owner of a leasehold estate in two and one-half lots of real estate situated in Chicago; the lease, among other things, providing that the lessee should pay the general taxes for the year 1928 and for each year thereafter.

The quadrennial assessment of real estate occurred in 1927. The board of assessors made and completed its quadrennial assessment for that year. However, before the assessment books were finally completed and certified, the state tax commission on July 10, 1928, ordered a reassessment of all real estate within Cook county. Pursuant to that order, a reassessment of real estate for the year 1927 was made by the board of assessors, and upon its completion the assessment books were certified and delivered to the board of review for correction and assessment.

Plaintiff's real estate was reassessed by the board of assessors, the assessment was approved by the board of review and taxes were extended against the valuations as fixed in the reassessment and the books are now in the hands of the collector with a warrant to collect the taxes as so extended.

Plaintiff claims in its bill that the taxes so extended are illegal, unconstitutional, and void. Plaintiff avers at great length facts from which such conclusion is deduced. It is unnecessary, in this case, to go into detail as to the particular facts pleaded, but it suffices to state that the bill avers facts from which it may be concluded that the real es-

tate of plaintiff was assessed in excess of its fair cash value and that the board of assessors and board of review respectively, willfully, knowingly, intentionally, and systematically failed, neglected, and refused to value and assess millions of dollars of personal property in Cook county subject to assessment and subject to taxation under the Constitution and the laws of the state of Illinois. The bill avers that the amount of personal property so deliberately and intentionally omitted from the assessment rolls is in excess of the fair cash value of $5,000,400,000. The general result is an undue and discriminatory tax against all real property in Cook county. The averment is also made that the plaintiff filed its objections to the reassessment with the board of review praying for a readjustment of such reassessment, but that the board of review arbitrarily, deliberately, and willfully failed, refused, and neglected to hear the complaint or to review the reassessment.

The bill, it may be assumed, makes out a case of a violation of the Constitution. Under the averments of the bill, if proved, it would seem that the taxes assessed against the plaintiff are grossly discriminatory and are excessive, and that plaintiff is entitled to some relief. But, in order that a federal court of equity may interfere, something more than illegality must be shown. There must be inadequacy of the remedy at law and special circumstances bringing the case under some special head of equity jurisdiction. Dows v. City of Chicago, 11 Wall. 108, 20 L. Ed. 65; State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Pittsburg, C. C. & St. L. R. Co. v. Board of Public Works, 172 U. S. 32, 19 S. Ct. 90, 43 L. Ed. 354. In the case of Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 S. Ct. 942, 57 L. Ed. 1288, the court say:

"In the courts of the United States it is a guiding rule that a bill in equity does not lie in any case where a plain, adequate, and complete remedy may be had at law. The statute so declares, Rev. Stat. § 723, U. S. Comp. Stat. 1901, p. 583 [28 USCA § 384], and the decisions enforcing it are without number. If it be quite obvious that there is such a remedy, it is the duty of the court to interpose the objection sua sponte, and in other cases it is treated as waived if not presented by the defendant in limine. Reynes v. Dumont, 130 U. S. 354, 395, 9 S. Ct. 486, 32 L. Ed. 934, 935; Allen v. Pullman's Palace Car Co., 139 U. S. 658, 11 S. Ct. 682, 35 L. Ed. 303. There was no waiver here. The objection was made by the demurrer and again by the answer; and so, if it was well grounded, it

was as available to the defendants in the circuit court of appeals to prevent a decree against them there as it was in the circuit court. Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U. S. 276, 29 S. Ct. 426, 53 L. Ed. 796.

"In the last case it was said of the pertinency of the guiding rule in cases such as this (page 281 [of 213 U. S., 29 S. Ct. 426]): 'A notable application of the rule in the courts of the United States has been to cases where a demand has been made to enjoin the collection of taxes or other impositions made by state authority, upon the ground that they are illegal or unconstitutional. The decisions of the state courts in cases of this kind are in conflict and we need not examine them. It is a mere matter of choice of convenient remedy for a state to permit its courts to enjoin the collection of a state tax because it is illegal or unconstitutional. Very different considerations arise where courts of a different, though paramount, sovereignty, interpose in the same manner and for the same reasons. An examination of the decisions of this court shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused it to refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved unimpaired. It has been held uniformly that the illegality or unconstitutionality of a state or municipal tax or imposition is not of itself a ground for equitable relief in the courts of the United States. In such case the aggrieved party is left to his remedy at law, when that remedy is as complete, practicable, and efficient as the remedy in equity.'"

The case last above quoted from is cited by the Supreme Court in the case of Keokuk & H. Bridge Co. v. Salm, 258 U. S. 122, 42 S. Ct. 207, 208, 66 L. Ed. 496, to the proposition that in the facts before the court in the Keokuk Case "there is thus no basis for the contention that resort to a suit such as this was necessary to prevent, either a sale for an illegal tax creating a cloud upon title, or multiplicity of suits to recover back the tax, or other irreparable injury."

The facts in the Keokuk Case are almost parallel with the facts in the case now under consideration. The Keokuk & Hamilton Bridge Company filed its bill in the federal court for the Southern District of Illinois praying for an injunction against the county treasurer to prevent the collection of taxes. The bill was predicated on the theory that the property of the bridge company was assessed at 150 per cent. of its actual value,

whereas the property of other corporations and individuals was assessed at only 40 per cent. of its value. The company contended, therefore, that it was being deprived of its property without due process of law, and was denied the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. The only element in the Keokuk Case that is not in this case is that the bridge company, so far as the record showed, did not apply to the board of review to correct the assessment. The court reviewed at length the statutory scheme of the assessment and collection of taxes in Illinois, and referred to several Illinois cases in which the Illinois courts, on application for judgment for delinquent taxes against real estate, entertain jurisdiction to grant the relief prayed for in this bill, and concluded: "The law of Illinois affords ample opportunity to question the amount and the validity of an assessment both before administrative tribunals and in its courts."

The court, therefore, affirmed the decree of the District Court for the Southern District of Illinois, and dismissed the bill.

Mr. Chief Justice Taft, in the case of Bohler v. Callaway, 267 U. S. 479, 45 S. Ct. 431, 434, 69 L. Ed. 745, in distinguishing the case then before the court from the Keokuk Case, used the following language: "Had the federal court jurisdiction to entertain the bill and enjoin the enforcement of the executions issued upon the assessments? Appellants cite Keokuk & Hamilton Bridge Co. v. Salm, 258 U. S. 122, 42 S. Ct. 207, 66 L. Ed. 496, as indicating the contrary. That was a bill in equity by a bridge company to enjoin a tax assessment by county assessors on a railroad bridge because of discrimination. The assessment made by the county assessors was subject to revision by a board of review required to give a hearing and to correct the assessment as should appear just. The payment of taxes was not to be enforced by distraint or levy, but by legal proceedings in a civil suit for the collection of a debt in which the owner might appear and defend on any legal ground, including discrimination. The complainant there brought his bill without taking any of the steps offered by the statute as an administrative remedy and ignored the defense he might make in the suit to collect the tax. The question here is different."

In the case of Wilson v. Illinois Southern Ry. Co., 263 U. S. 574, 44 S. Ct. 203, 68 L. Ed. 456, which was an appeal from the District Court for the Eastern District of Illinois, in which it was sought to enjoin the county collector from collecting taxes assessed and extended against the railroad company because of discrimination in the assessment, the court held that the District Court had jurisdiction because the railroad traversed a number of counties, and the application for judgment for delinquent taxes was required to be made in several counties. The court sustained the jurisdiction on the equitable ground of multiplicity of suits. In distinguishing the case then before the court from the Keokuk Case, Mr. Justice Holmes uses the following language: "The appellants rely mainly upon Keokuk & Hamilton Bridge Co. v. Salm, 258 U. S. 122, 42 S. Ct. 207, 66 L. Ed. 496. In that case a bill charging fraudulent overvaluation was dismissed and the dismissal was affirmed by this Court on two grounds, that there was an adequate remedy at law and that the plaintiff had not tendered or offered to pay the amount confessedly due. The latter ground is absent here. As to the former it seems to us that the present case is to be distinguished. Keokuk & Hamilton Bridge Co. v. Salm arose upon an assessment of real estate by county assessors in a single county, as to which the remedies available were pointed out. Here the assessment was of property in five counties, by the State Board of Equalization for 1917 and 1918, and by its successor the State Tax Commission for the two later years. Assuming that in each of the counties before the tax could be collected a judgment must be obtained in the county court in a civil suit and that in such suits the defendants, the present plaintiffs, could set up the facts here relied upon, as in the Keokuk Co.'s Case, not only would those suits be many, but there would be insuperable difficulty in determining what the proper assessment against the whole road should be and in apportioning the due share to the county concerned. This difficulty would recur in each of the five counties with not improbably different results in each. It seems to us that the right of full defence in those suits, if it exists, is not an adequate remedy at law."

The case of Henrietta Mills v. Rutherford Co., 281 U. S. 121, 50 S. Ct. 270, 74 L. Ed. 737, also supports the proposition that a federal court of equity is without jurisdiction in this case.

The bill in this case simply alleges that the taxes levied and extended are illegal and unconstitutional. The bill does not allege any facts of recognized equitable jurisdiction such as a threatened cloud upon title or multiplicity of suits. The property of

the plaintiff is in no imminent danger. It cannot be attached, levied upon, or sold for taxes without a judgment of the county court. On application for judgment, the county court has the jurisdiction and the power to adjudicate upon the justice of the tax, including the questions of due process of law and discrimination. The final act, under the law of Illinois, fixing the liability of plaintiff's property to taxation, has not been taken. Plaintiff has still a right to a hearing by the Illinois courts. What the plaintiff actually seeks in this case is that this court enjoin the county collector from taking the very step by which the plaintiff may be heard as to the justice of the tax. As pointed out in the Keokuk Case: "From the judgment of the county court an appeal may be taken to the Supreme Court of the state upon giving a bond to pay the amount of the assessment and costs; and the appeal will operate as a supersedeas if the appellant deposits with the county collector an amount of money equal to the amount of the judgment and costs. If upon final hearing judgment for sale of the lands for taxes is refused, the deposit is returned by the collector to the appellant."

The court is of opinion that the ruling stated in Gallup v. Schmidt, 183 U. S. 300, 22 S. Ct. 162, 164, 46 L. Ed. 207: "It has frequently been held by this court, when asked to review tax proceedings in state courts, that due process of law is afforded litigants if they have an opportunity to question the validity or the amount of an assessment or charge before the amount is determined, or at any subsequent proceedings to enforce its collection, or at any time before final judgment is entered," is applicable.

There is open to the plaintiff the opportunity of reviewing the assessments in the state court. Unless and until such remedy is exhausted, in the absence of some recognized equitable ground, there is no right to seek relief in a federal court of equity. Where the statutes of a state afford a plain, speedy, and adequate remedy, the right to resort to equity is excluded. Apartments Building Co. v. Smiley (D. C.) 26 F.(2d) 469.

The court places its decision on the case of Keokuk & H. Bridge Co. v. Salm, 258 U. S. 122, 42 S. Ct. 207, 66 L. Ed. 496. The Keokuk Case involved property, as does this case, in a single county in Illinois. Discrimination was alleged in this case as in that case. In neither case was there any equitable ground for any interference by a Federal court of equity.

The bill will be dismissed for want of jurisdiction.