## WARREN COUNTY, MISSISSIPPI v. HESTER, Tax Collector of Madison Parish, et al. (two cases).

### Nos. 3112, 3502.

United States District Court
W. D. Louisiana, Monroe Division.

Sept. 5, 1952.

See also, D.C., 104 F.Supp. 398.

Vollor, Teller & Biedenharn, Vicksburg, Miss., Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for plaintiff.

Hudson, Potts, Bernstein & Davenport, Monroe, La., Thompson L. Clarke, St. Joseph, La., for defendants.

DAWKINS, Chief Justice.

The remaining issue in these suits, which are identical except as to taxable years, is the claim by plaintiff of discrimination in the value of its combined highway and railroad bridge across the Mississippi River at Vicksburg, Mississippi, when compared to the values used for assessment purposes of other property in the assessment district.

On August 21, 1952, plaintiff filed with the Clerk of this court a notice, addressed to the attorneys for defendants, of its purpose to take as on discovery depositions of the following officials of Madison Parish, Louisiana:

Andrew L. Yerger, Vice President; R. C. Webb, W. H. Hewes, President; W. F. Powell, W. M. Scott, Jr., Ben R. Jordan, Frank Stewart, Terrell Lewis, R. B. Watson, Guy Nichols, all members of the Police Jury of Madison Parish, Louisiana; and D. H. Allen, Assessor of Madison Parish, Louisiana; and R. R. Spigener, Deputy Assessor thereof.

On the same day, August 21, 1952, defendant filed in both cases what is styled a "Motion for Protective Order", asking that the notice be "quashed and the taking of such depositions be forbidden", and informing the court that:

"1. On Wednesday, August 20th, 1952, 2:30 P.M., there was served upon defendants' Attorneys of Record herein, written notices in Civil Actions 3112 and 3502 above notices that on Wednesday, September 3rd, 1952, at the office of the Louisiana Tax Commission in Baton Rouge, Louisiana, plaintiff, by oral examination, would take the deposition of R. E. Jacobs, Chairman, Edgar G. Mouton and Charles G. Zatarain, members and C. W. Schatzle, Jr., an employee of the Louisiana Tax Commission; also likewise, another notice that at Tallulah, Louisiana, on Monday, September 8th, 1952, plaintiff would take the deposition of the Assessor and Deputy Assessor of Madison Parish and of ten (10) named members of the Police Jury of Madison Parish.

"2. Defendants aver, as has been verbally stated to their attorneys, that the purpose of said depositions is to: *First,* enquire into the reasons, methods, processes, etc., by means of which they determined or approved the valuation of the Vicksburg Bridge property of plaintiff situated in Madison Parish, Louisiana, for tax assessment purposes for the tax-years 1950 and 1951; *Second,* enquiring into the assessment valuations, etc., of other property taxpayers, especially railroads and pipelines and other taxpayers in Louisiana, so far undisclosed to defendants.

"3. The subject matter sought by such depositions is privileged under both the statutory law and the jurisprudence."

The taxes for the two years in dispute, pursuant to the State law, were paid, and plaintiff brought these actions to recover the amounts so paid, upon the ground, first, that the bridge was exempt from taxation because it was public property belonging to the County of Warren County, Mississippi, a subdivision of that state; and in the alternative, alleging that the value used for tax purposes was excessive and discriminatory. Similar actions, but for a declaratory judgment that the bridge was so exempt, were filed in the State Court before or about the same time, which were prosecuted to finality, with the result that the State Supreme Court found against the claim of exemption. In the meantime, the cases in this court were held in abeyance. Thereafter, defendant filed motions to dismiss and for summary judgment, based upon the decision of the State Court, which was sustained by this court as to the claim of exemption. This left for determination the matter of the alleged over-assessment and discrimination. It is with respect to these issues that the discovery process was invoked.

At the instance of the defendant, this court entered an order staying the discovery procedure until it could determine whether to limit, and to what extent, the plaintiff in its inquiry into the bases upon which the assessments were made.

██ Plaintiffs and defendant cite mainly as supporting their contentions, respectively, along with other cases, Bohler v. Callaway, 267 U.S. 479, 45 S.Ct. 431, 69 L. Ed. 745; and Chicago, B. & Q. R. Co. v. Babcock, 204 U.S. 585, 27 S.Ct. 326, 51 L. Ed. 636. In the first place, plaintiff does not allege fraud, but the taking of its property without due process of law and the denial of equal protection under the law in that

the value of the bridge for tax purposes was raised to approximately three times what it was prior to its acquisition by complainant. Whereas, up to that time it had been assessed on approximately the same basis of all other property in the district. Without engaging in an extended analysis of these and other cases, it is sufficient to say that I believe the two can be distinguished by pointing out the basic issue in a case of the kind with which we are now confronted. Primarily, it involves a comparison of the cash value of the bridge with that of other property, and a determination of the percentage of those values used by the taxing agency for collecting the taxes. It does not require an inquiry into the process by which the taxing officials reach those values. As pointed out in the Babcock case, the methods of reaching their conclusions by such officials are similar to those of a judge, petit or grand jury, and to subject such officers to the necessity of supporting their decisions in an extended cross-examination would be equally objectionable. I must conclude, therefore, that while in the examination of either State or parochial officers they may be interrogated first on the cash value of the bridge and other property, and secondly, as to percentage of those values used for taxation purposes, they cannot be required to give in detail the manner in which those values were arrived at. The assessment rolls undoubtedly show the assessed value of all property in the district, and if the plaintiff can prove by proper evidence that those cash values other than its bridge have been deliberately ignored in applying the percentages for tax purposes, whereas the bridge has been assessed at a much higher figure of its cash value, then there would be discrimination which would justify the court in granting relief. This appears to be what was held in the Bohler and other similar cases. In establishing this proof, complainant will not, of course, be confined to the testimony of these officials, but may prove its claim by any other relevant evidence which tends to establish the real values of either the bridge or other property and the percentages used for taxing purposes. Of court, cash value may involve many elements, such as earning power, net income before taxes, depreciation, etc. This, however, does not include the right to inquire into or to expose any privileged matter dealing with any taxpayer's business affairs which is protected by the State law. If it be true that the practice prevails generally of using a certain percentage of the actual or cash value throughout the State, or even within the particular taxing district, this may be proved; but it is well to repeat, this does not involve the mental processes or the elements which the taxing authorities used in reaching their conclusions.

The only means known to this court by which the examination can be kept within permissible bounds, if there is controversy, is to suspend the interrogation when necessary and to apply to the court for a ruling.